**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 2008-cv-01381-MSK-CBS

THE CASCADE FUND, LLLP,
on behalf of itself and a
class of similarly situated persons,

        Plaintiffs,

v.

ABSOLUTE CAPITAL MANAGEMENT HOLDINGS LIMITED;
ABSOLUTE GENERAL PARTNER LIMITED;
FLORIAN HOMM;
SEAN EWING;
JOHN A. FLEMING;
RONALD E. TOMPKINS;
ULLRICH ANGERSBACH; and
ARGO GROUP LIMITED,

        Defendants.

---

**DEFENDANT ARGO GROUP LIMITED'S MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT AND JURY DEMAND**

---

        Defendant Argo Group Limited ("Argo"), through its undersigned counsel and pursuant

to F.R.C.P. 12(b)(2) and 12(b)(6), hereby moves to dismiss the First Amended Complaint and

Jury Demand (Dkt. No. 41) ("Amended Complaint") for lack of personal jurisdiction and failure

to state a claim, respectively.

### INTRODUCTION

        Plaintiff filed this class action to recover the decrease in the value of its interests in

companies organized under and governed by the laws of the Cayman Islands.  Those companies

are not before this Court.  Plaintiff instead initially filed its complaint for securities fraud against

the investment manager of the funds (Absolute Capital Management Holdings Limited, k/n/a ACMH Limited ("ACM")), a second entity that had no involvement with the funds (Absolute General Partner Limited ("AGP")) and two directors of the funds (Tompkins and Fleming) (collectively the "ACM Defendants"). Each ACM Defendant is a foreigner residing outside of the United States and the ACM Defendants have moved to dismiss the Amended Complaint on the grounds they are not subject to the personal jurisdiction of this Court (as well as other grounds).

Now, over a year after initiating this action, Plaintiff seeks to bring Argo—an even more remote entity—before this Court. Argo, a publicly traded company on the London Stock Exchange, is incorporated under the laws of the Isle of Man, has never done business with Plaintiff, has no United States assets or presence, and has virtually no contacts with the United States. Indeed, Plaintiff relies solely upon the ACM Defendants' contacts to support its jurisdictional claims against Argo. For the reasons set forth in the ACM Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 46), which Argo incorporates by reference herein, this Court lacks personal jurisdiction over the ACM Defendants. But even if this Court's jurisdiction extends to the ACM Defendants, it cannot extend to Argo, a foreign entity with no relationship with Plaintiff, the State of Colorado or the United States.

Moreover, even if there was jurisdiction over Argo (and there is not), the Amended Complaint must be dismissed because it fails to state a claim against Argo upon which relief can be granted. Plaintiff unsuccessfully attempts to allege successor liability against Argo relating to a legitimate foreign transaction that resulted in two separate operating entities, in which ACM received reasonable equivalent value in exchange for the assets it transferred to Argo. For the reasons discussed below, Argo should be dismissed as a defendant.

## I.    THE AMENDED COMPLAINT AGAINST ARGO SHOULD BE DISMISSED PURSUANT TO F.R.C.P. 12(b)(2) BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER ARGO.

### A.    Grounds for Dismissal

Plaintiff's claim against Argo is based solely upon a transaction entered into by foreign entities, in a foreign country, which is governed by foreign law, whereby ACM sold certain assets to Argo in exchange for Argo stock. *See* Amended Complaint at ¶¶ 101-102.  The Amended Complaint is devoid of any factual allegations of contacts by Argo with either Colorado or the United States. *See generally* Amended Complaint.  Nor does the Amended Complaint contain any factual allegations of contact between Plaintiff and Argo. *Id.*  Plaintiff is essentially seeking to have this Court exercise personal jurisdiction over a foreign entity with no contacts with Colorado, the United States or Plaintiff pursuant to a foreign transaction governed by foreign law.[1]  As a result, this Court lacks personal jurisdiction over Argo because Argo does not have minimum contacts with the forum sufficient to satisfy the Colorado long-arm statute or the Due Process Clause of the Fifth Amendment.

### B.    Burden of Proof

Plaintiff bears the burden of establishing this Court's personal jurisdiction over Argo. *See, e.g., Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).  To do so, Plaintiff must "support jurisdictional allegations in [the Amended Complaint] by competent proof of the supporting facts if the jurisdictional allegations are challenged by an

---

[1] Although the Amended Complaint purports to bring a class action, Plaintiff must establish jurisdiction from its contacts with defendant and cannot rely upon the contacts of unnamed class members. *See Selman v. Harvard Med. Sch.*, 494 F.Supp. 603, 613 n.6 (S.D.N.Y. 1980), *aff'd* without opinion, 636 F.2d 1204 (2d Cir. 1980) (rejecting plaintiff's argument that "injuries to and facts relevant to other members of the class should be used in determining jurisdiction " over defendant because "the named class representative himself must satisfy all jurisdictional prerequisites before the action can go forward"); *see also Mathews v. Brookstone*, 469 F. Supp. 2d 1056, 1067 n.17 (S.D. Ala. 2007) ("The law is clear that a plaintiff cannot rely on acts allegedly perpetrated against other putative class members to establish personal jurisdiction over defendants for her claims.").  Regardless, the Amended Complaint contains no allegations of any contacts between unnamed class members and Argo.

appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).

Conclusory allegations need not be accepted as true. *See Wenz v. Memory Crystal*, 55 F.3d

1503, 1505 (10th Cir. 1995). Instead, it is only well-pled—*that is, plausible, non-conclusory,*

*and non-speculative facts*—that must be taken as true. *Dudnikov v. Chalk & Vermilion Fine*

*Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). And as the Tenth Circuit instructs: "[G]reat care

and reserve should be exercised" when exercising personal jurisdiction over foreign defendants.

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

### C.    Material Facts

The following facts are material to this Motion:

1.    Argo is a company incorporated under the laws of the Isle of Man. Ex. 1, Argo

Decl., ¶ 3.

2.    Argo is a publicly held entity traded on AIM, a market regulated by the London

Stock Exchange. *Id.*

3.    Argo itself does not engage in any investment management services but merely

serves as a holding company for four operating subsidiary investment management companies

(the "Argo Subsidiaries"). *Id.* at ¶ 4.

4.    Argo is not registered with the United States Securities and Exchange

Commission ("SEC"). *Id.* at ¶ 5.

5.    Argo is not registered as an investment advisor in the United States or licensed to

do business in the United States. Ex. 1 at ¶ 6.

6.    Argo does not lease or own any real estate, maintain any offices, maintain any

bank accounts, have any employees, or conduct or solicit business in Colorado or any other

location in the United States. *Id.* at ¶ 7.

7.     The Argo Subsidiaries are not incorporated under the laws of the United States. *Id.* at ¶ 8.

8.     The Argo Subsidiaries manage five funds:  The Argo Fund Limited, Argo Global Special Situations Fund SP, Argo Capital Partners Fund Limited, Argo Real Estate Opportunities Fund Limited and Argo Distressed Credit Fund LLP (collectively, the "Argo Funds"). *Id.* at ¶ 9.

9.     The Argo Funds were neither formed nor exist under the laws of the United States. *Id.* at ¶ 10.

10.     The Argo Funds have never been listed on any United States stock exchange and are not registered with the SEC. *Id.* at ¶ 11.

11.     The Argo Subsidiaries do not lease or own any real estate, maintain any offices, maintain any bank accounts, have any employees, or conduct or solicit business in Colorado. *Id.* at ¶ 12.

12.     The Argo Subsidiaries do not lease or own any real estate, maintain any offices, maintain any bank accounts, or have any employees in the United States. *Id.* at ¶ 13.

13.     Argo Capital Management (Cyprus) Limited ("ACML") is one of the Argo Subsidiaries, and is incorporated under the laws of Cyprus. *Id.* at ¶ 14.

14.     ACML is registered with the SEC as an offshore advisor. *Id.* at ¶ 15.

15.     ACML, however, does not conduct or directly solicit business in the United States, or have any other contacts with the United States. *Id.* at ¶ 16.

16.     The remaining Argo Subsidiaries also do not conduct or solicit business in the United States, or have any other contacts with the United States. *Id.* at ¶ 17.

17.     Argo and/or the Argo Subsidiaries have never marketed to any Colorado residents, and have not had any contacts with Colorado. *Id.* at ¶ 18.

18.     Argo has never solicited Plaintiff or entered into any contractual or other

relationship with Plaintiff.   To its knowledge, Argo has never even communicated with Plaintiff.

*Id.* at ¶ 19.

19.     The Amended Complaint does not contain any factual allegations of contact

between Plaintiff or members of the proposed class and Argo and/or the Argo Subsidiaries.  *See*

*generally* Amended Complaint.

20.     The Amended Complaint does not contain any factual allegations of contact with

Colorado or the United States by Argo and/or the Argo Subsidiaries.  *Id.*

21.     The Amended Complaint does not contain any factual allegations that Plaintiff or

members of the proposed class have invested in any of the Argo Funds.  *Id.*

22.     The agreement between Argo and ACM, referenced by Plaintiff in paragraph 61

of the First Amended Complaint and Jury Demand (the "Agreement"), was drafted, negotiated

and entered into outside of the United States.  Ex. 1, Argo Decl., ¶ 20.

23.     All of Argo's representatives with knowledge of the Agreement, as well as all

documents and other information relating to the Agreement, are located outside of the United

States.  *Id.* at ¶ 21.

**D.      Should Materials Outside the Pleadings Be Considered?**

The Court should consider the declaration of Argo, which is attached to this Motion as

Exhibit 1.  The declaration can properly be considered on a motion to dismiss for lack of

personal jurisdiction.  *Malea, Ltd. V. Jawer S.A.*, 511 F.3d 1060, 1065 (10th Cir. 2007).

**E.**     **Argument**

1.     Plaintiff May Not Rely On The Nationwide Service Of Process Provision Of The Securities Exchange Act For Purposes Of Establishing Personal Jurisdiction Over Argo.

Plaintiff relies on the nationwide service of process provision of the Securities Exchange Act of 1934, 15 U.S.C § 78aa, in an attempt to establish personal jurisdiction over Argo. *See* Amended Complaint, ¶¶ 12-13. When the personal jurisdiction of a federal court is invoked under a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had sufficient minimum contacts with the United States. *SEC v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996). However, while the nationwide service of process provision may be effective as to out-of-state defendants who are alleged to have violated the Securities Exchange Act, it does not bestow pendent personal jurisdiction over Argo against whom Plaintiff has only asserted a state-law claim of successor liability. *See generally Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007) (applying state law to plaintiff's claim that defendant was liable as successor of corporation alleged to have violated the Securities Exchange Act).

In *Gill v. Three Dimension Systems, Inc.*, 87 F. Supp. 2d 1278, 1283-84 (M.D. Fla. 2000), the plaintiff alleged securities fraud under the Securities Exchange Act against certain defendants while alleging only state-law claims against other defendants. The court held that the defendants against whom the plaintiff had only alleged state-law claims were not susceptible to personal jurisdiction under the Securities Exchange Act's nationwide service of process provision, nor did that provision afford pendent personal jurisdiction over such defendants. *Id.* The court thus required plaintiff to plead sufficient facts to establish a basis for personal jurisdiction independent of the nationwide service of process provision, and under the applicable state long-arm statute. *Id.* at 1284; *see also Morley v. Cohen*, 610 F. Supp. 798, 823 (D. Md. 1985)

(holding that "plaintiffs must plead and prove sufficient facts to establish a basis for personal jurisdiction independent of nationwide service of process provisions of federal claims" where only state-law claims remained.); 69 Am.Jur.2d Securities Reg. – Federal, § 282 ("Nationwide service of process provision, although effective as to out-of-state defendants alleged to have committed securities fraud, does not bestow pendent personal jurisdiction over pendent party defendants against whom a plaintiff asserts state law claims only."). Thus, personal jurisdiction is proper only if Argo is subject to personal jurisdiction under Colorado's long-arm statute. As discussed below, it is not.

> 2.    Argo Is Not Subject To Personal Jurisdiction Under Colorado's Long-Arm Statute.

The Colorado long-arm statute "confers the maximum jurisdiction permitted by the due process clauses of the United States and Colorado Constitutions," both of which require the same two-step analysis. *Melea, Ltd. V. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (internal citations and quotations omitted). The defendant must have sufficient "minimum contacts" with the forum state and the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945).

> a.    *Argo Lacks Sufficient Minimum Contacts With Colorado.*

The minimum contacts test may be met through the exercise of either specific or general jurisdiction. General jurisdiction may be exercised where the defendant has "continuous and systematic general business contacts with the forum state . . . ." *Melea*, 511 F.3d at 1066. In the absence of "continuous and systematic" contacts, the Court may exercise specific personal jurisdiction over a defendant that "purposefully directed" its activities at the state's residents if the underlying action arises from those activities. *Id.*

Argo lacks sufficient minimum contacts with Colorado for this Court to exercise either specific jurisdiction or general jurisdiction.  It remains "essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1340 (2d Cir. 1972); *The Boppy Co. v. Luvee Products Corp.*, Civ. No. 04-MK-320, 2004 WL 2608265, *4 (D. Colo. May 25, 2004) ("The 'minimum contacts' test requires not only that a defendant have made contact with the forum state but that such contacts were 'purposeful' and significant, not 'random, fortuitous, or attenuated.'" (citing *Burger King Corp. Rudzewicz*, 471 U.S. 462, 478 (1985)).

Here, there are no contacts with Colorado.  Argo does not lease or own any real estate, maintain any offices, maintain any bank accounts, have any employees or conduct or solicit business in Colorado. Ex. 1 at ¶ 7.  Nor has Plaintiff alleged any well pled facts showing that Argo purposefully availed itself of the privilege of conducting activities within Colorado.  The Amended Complaint fails to contain even a single allegation showing Argo's purposeful availment with respect to the conduct of any activity in Colorado.  Indeed, Plaintiff concedes as much in its Amended Complaint where each and every jurisdictional fact alleged relates only to the ACM Defendants. *See Amended Complaint*, ¶ 13.  With no minimum contacts, jurisdiction cannot be maintained as to Argo. *International Shoe*, 326 U.S. at 319 (The "[Due Process] clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations.").

       b.     *Exercise Of Personal Jurisdiction Over Argo In Colorado Is Not Fair And Reasonable.*

Even if Plaintiff could show minimum contacts with Colorado, which it cannot, this Court's exercise of jurisdiction over Argo would not comport with "traditional notions of fair

play and substantial justice." *International Shoe*, 326 U.S. at 316. To meet this constitutional requirement, the Court must "determine 'whether exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case.'" *Pro Axess, Inc. v. Orlux Distrib 'n, Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005) (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998)). This requires consideration of: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the countries in furthering fundamental substantive social policies. *Id.* at 1279-80.

> Importantly:
>
> [T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].

*Id.* at 1280.

As explained in Section I.E.2.a above, Argo has no contacts with Colorado. Accordingly, Argo must show very little in terms of unreasonableness to defeat jurisdiction. Nonetheless, consideration of the factors set forth in *Pro Axess* compels a finding that the exercise of personal jurisdiction over Argo in Colorado would be unfair and unreasonable.

First, litigating in Colorado would be tremendously burdensome for Argo. "'The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.'" *TH Agric. & Nutrition, LLC v. ACE European Group Ltd.*,

488 F.3d 1282, 1292 (10th Cir. 2007) (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480

U.S. 102, 113 (1987)).  Under such circumstances, courts must exercise "great care and reserve"

before exercising personal jurisdiction over a foreign defendant. *TH Agric. & Nutrition*, 488

F.3d at 1292 (quoting *OMI*, 149 F.3d at 1096).  Because Argo is an Isle of Man company and the

Argo Subsidiaries are managed in London, Cyprus and the Cayman Islands, litigating in

Colorado would impose a tremendous burden upon Argo. *See* Ex. 1 at ¶ 3.  All of Argo's

witnesses and documents relating to Plaintiff's claim are located outside of the United States. *Id.*

at ¶ 21.  Indeed, Argo does not engage in business in Colorado, much less anywhere in the

United States. *Id.* at ¶ 7.  Accordingly, this factor weighs in favor of not exercising personal

jurisdiction over Argo in Colorado.

Second, Colorado's interest in resolving the dispute is relatively weak.  Although

Plaintiff is a Colorado limited liability limited partnership, its claim against Argo relates to a

foreign transaction involving foreign law, between publicly traded foreign entities.  As set forth

above, Argo has no contacts with Colorado or the United States.  All of Argo's witnesses and

documents relating to Plaintiff's claim are outside of the United States.  As a result, Colorado's

limited interest in Plaintiff's claim against Argo is offset by the prevalent foreign interests of

Plaintiff's claim. Accordingly, this factor also weighs in favor of not exercising personal

jurisdiction over Argo in Colorado.

Third, Plaintiff may receive convenient and effective relief in the Isle of Man, the place

of Argo's incorporation.  Undoubtedly, Plaintiff would prefer to litigate its claim against Argo in

Colorado.  However, as shown above, it would be tremendously burdensome for Argo to be

forced to defend this action in Colorado.  Courts recognize that this factor may weigh in favor of

the exercise of jurisdiction where forcing the plaintiff to litigate in another forum greatly

diminishes the plaintiff's chances of recovery because the forum's laws or the burden involved "may be so overwhelming as to practically foreclose pursuit of the lawsuit." *OMI*, 149 F.3d at 1097. This is not the case here. Plaintiff has not alleged, nor can it allege, that the burden of litigating in the Isle of Man may be so overwhelming as to practically foreclose pursuit of its claims against Argo. In fact, as set forth in Section I.E.3 below, if this Court were to exercise jurisdiction over Argo an issue could later arise regarding the enforceability of any judgment of this Court against Argo in the courts of the Isle of Man. Of course, this would result in entirely inconvenient and ineffective relief for Plaintiff. This factor, therefore, weighs against the exercise of personal jurisdiction over Argo in Colorado.

Fourth, consideration of the interstate judicial system's interest in obtaining efficient resolution also weighs against the exercise of personal jurisdiction over Argo in Colorado. This factor asks "'whether the forum state is the most efficient place to litigate the dispute." *TH Agric. & Nutrition*, 488 F.3d at 1296 (quoting *OMI*, 149 F.3d at 1097). The location of witnesses and documents are among the keys to this inquiry. *Id.* Because Argo has no documents or witnesses in Colorado, Colorado would not be the most efficient place to litigate this dispute. *See* Ex. 1 at ¶ 20. Accordingly, this factor also weighs against the exercise of personal jurisdiction over Argo in Colorado.

Fifth, the shared interest of the countries in furthering fundamental substantive social policies weighs against the exercise of personal jurisdiction over Argo in Colorado. In considering this factor in cases involving foreign defendants, courts must "look closely at the extent to which the exercise of personal jurisdiction interferes with the [foreign nation's] sovereignty." *TH Agric. & Nutrition*, 488 F.3d at 1297. "Relevant considerations include 'whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law

governs the dispute, whether the foreign nation's citizen chose to conduct business with a forum

resident.'" *Id.* (quoting *OMI*, 149 F.3d at 1098). These considerations lead to the conclusion

that exercising jurisdiction in Colorado would interfere with Isle of Man sovereignty. Argo is a

publicly traded company on the London Stock Exchange and is incorporated in the Isle of Man.

Ex. 1 at ¶ 3. In addition, Argo did not choose to conduct business with residents of Colorado. In

fact, Argo does not conduct any business with residents of Colorado. *Id.* at ¶ 7. Argo has no

connection whatsoever with the sales of securities that Plaintiff alleges to have purchased and

which form the basis of the Plaintiff's claims. *Id.* at ¶ 19; *see also* Section § I.C., Material Facts

19-21. Plaintiff's successor liability claim asserted against Argo is not supported by any factual

allegations of contact between Plaintiff or members of the proposed class and Argo, the Argo

Subsidiaries and/or the Argo Funds. *See* Amended Complaint. For these reasons, exercise of

personal jurisdiction over Argo in Colorado is inappropriate and would interfere with Isle of Man

sovereignty. This factor, therefore, weighs against the exercise of personal jurisdiction over

Argo in Colorado.

As a result, consideration of the five factors used to determine whether exercise of

personal jurisdiction over a defendant with minimum contacts is reasonable in light of the

circumstances surrounding the case weighs against the exercise of personal jurisdiction over

Argo in Colorado. Accordingly, the exercise of personal jurisdiction over Argo in Colorado

would be unfair and unreasonable and would not comport with traditional notions of fair play

and substantial justice.

   c.  *Argo Lacks Sufficient Minimum Contacts With The United States.*

Even assuming *arguendo* Argo is subject to the nationwide service of process provision

of the Securities Exchange Act—which Argo denies—Argo lacks sufficient minimum contacts

with the United States for this Court to exercise either specific or general jurisdiction.

Argo is a foreign company publicly traded on the London Stock Exchange and incorporated under the laws of the Isle of Man. Ex. 1 at ¶ 3. Argo does not have any direct contact with the United States. It is not registered as an investment advisor in the United States and is not licensed to do business in the United States. *Id.* at ¶ 6. It does not lease or own any real estate in the United States, have any offices in the United States, maintain any bank accounts in the United States, have any employees in the United States or conduct or solicit any business in the United States. *Id.* at ¶ 7.

Argo's only contact with the United States is through one of the Argo Subsidiaries, ACML, which is registered with the SEC as an offshore advisor. *Id.* at ¶¶ 14-15. As a general rule, however, "contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity" for purposes of general jurisdiction. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) (internal citations omitted); *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n. 17 (7th Cir. 2003).

Even if they could, the subsidiaries' contacts would not provide jurisdiction over Argo. ACML's limited contacts with the United States has no relationship to the transaction at issue. ACML was never involved in the sale of interests to Plaintiff, never directed any marketing activities to Plaintiff, and has had no communications or contacts with Plaintiff. In short, Plaintiff's claim did not arise out of or relate to the subsidiaries' contacts with the United States and cannot support specific jurisdiction over Argo in this case. *Burger King,* 471 U.S. at 472-73 (requiring that the underlying action be based upon the activities that arise out of or relate to the defendant's contacts with the forum). Moreover, the Fifth Amendment does not reach so far as to give this Court specific jurisdiction over a foreign entity whose contacts with the forum have no relationship with the conduct at issue in the Amended Complaint. *See id; see also IM*

*Partners v. Debit Direct Ltd.*, 394 F. Supp. 2d 503, 513 (D. Conn. 2005) (finding that companies based in the Isle of Man were not subject to jurisdiction in the United States in a securities fraud action absent allegation that they had any direct contact with investors in the United States or any other contact with the forum).

Additionally, Argo does not have systematic and continuous contacts with the United States so as to bring Argo within this Court's general jurisdiction.  "There is no bright line rule to determine what constitutes systematic and continuous contacts." *Int'l Beauty Prods.. LLC v. Beveridge*, 402 F. Supp. 2d 1261, 1272 (D. Colo. 2005) (citations omitted).  However, "the threshold of contacts necessary to support general jurisdiction is high," *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1543 (10th Cir. 1996), and "[t]he facts required to establish general jurisdiction must be extensive and persuasive." *Tomlinson v. H&R Block, Inc.*, Civ. No. 04-7070, 2005 WL 2542896, *2 (10th Cir. Oct. 12, 2005).  In assessing contacts for purposes of general jurisdiction, courts have considered the frequency of a defendant's travel to the forum state, the frequency and amount of work a defendant performed in the forum state, and whether a defendant owned property in the forum state. *Trierweiler*, 90 F.3d at 1544 (finding that general jurisdiction over individual was not appropriate where individual did a small amount of business in Colorado and visited the state often, belonged to the Tenth Circuit bar, lived in Colorado for several years prior, and owned property in Colorado).

Here, ACML's registration with the SEC as an offshore advisor can hardly be characterized as continuous and systematic. *See, e.g., Wenche Siemer v. The Learjet Acquisition Corp.*, 966 F.2d 179, 180-84 (5th Cir. 1992) (rejecting the notion that merely registering to do business and appointing an in-state agent for service of process confers general personal jurisdiction over a nonresident defendant); *Ratliff v. Cooper Lab., Inc.*, 444 F.2d 745, 748 (4th

Cir.1971) ("Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another. The principles of due process require a firmer foundation than mere compliance with state domestication statutes.").

Even if such contacts could be characterized as continuous and systematic, this Court's jurisdiction would not extend to Plaintiff's claims. In *In Re Parmalat Sec. Lit.*, 376 F. Supp. 2d 449 (S.D.N.Y. 2005), the Court was faced with an analogous issue: whether it had personal jurisdiction over a foreign defendant who allegedly sold securities traded on a foreign exchange to United States investors. The Court found that its jurisdiction extended only to the claims made by United States investors who actually purchased their interests in the United States. *Id.* at 456. Here, there are no allegations that Plaintiff or members of the proposed class had any contact with Argo, the Argo Subsidiaries or actually invested in the Argo Funds. *See* § I.C., Material Facts 19-21.

    2.    <u>Personal Jurisdiction Over Argo Cannot Be Premised On Personal Jurisdiction Over ACM.</u>

To the extent Plaintiff intends to premise personal jurisdiction over Argo on this Court's alleged personal jurisdiction over ACM, such an offering would be improper. "Each defendant's contacts with the forum . . . must be assessed individually." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) (citing *Rush v. Savchuk*, 444 E.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction.")). Moreover, "[c]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Central States, Southeast and Southwest Area Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). Courts have

held that, at minimum, there must be a showing that "the separateness of the entities" was not maintained and that the parent corporation "dominate[s] the day-to-day activities of the subsidiary." *Camellia City Telecasters, Inc. v. Tribune Broadcasting Co., Inc.*, Civ. No. 84-JM-41, 1984 WL 782, * 3 (D. Colo. July 12, 1984); *see also Central States*, 230 F.3d at 943.

The reasoning provided for this holding is two-fold. "First, where corporate formalities are substantially observed, and the parent does not dominate the subsidiary, a parent and a subsidiary are two separate entities and the acts of one cannot be attributed to the other." *Central States*, 230 F.3d at 944. Second, "the primary purpose of the corporate form is to prevent a company's owners, whether they are persons or other corporations, from being liable for the activities of the company . . . . Thus, such owners do not reasonably anticipate being hailed into a foreign forum to defend against the liability for errors of the corporation." *Id.*

Here, the Amended Complaint does not contain any factual allegations that ACM and Argo have ignored corporate formalities—by, for example, intermingling finances or books and records—or that ACM and Argo have operated in any way other than as separate entities. Nor does the Amended Complaint contain any factual allegations that ACM exercises a high degree of control over Argo, or vice versa. Without such factual allegations, Plaintiff cannot premise personal jurisdiction over Argo on this Court's alleged personal jurisdiction over ACM. Indeed, ACM and Argo are two separates entities, and the acts of one cannot be attributed to the other.

3.    A Judgment Based On This Court's Exercise Of Personal Jurisdiction In Colorado Cannot Be Enforced Against Argo In The Isle Of Man.

Plaintiff has not filed its successor liability claim against Argo in the proper forum. This is evidenced not only by the Court's lack of personal jurisdiction over Argo, but by the fact that any judgment entered by this Court in favor of Plaintiff is unenforceable in the Isle of Man.

The Isle of Man, through the Isle of Man Act of 1979, has adopted Sections 2 through 5 of the Foreign Judgments (Reciprocal Enforcement) Act of 1933 ("Foreign Judgments Act") which provide procedures and rules relating to the enforcement of foreign judgments in the Isle of Man. *See* Ex. 2, Isle of Man Act of 1979, ch. 58 § 4.[2] Section 2 of the Foreign Judgments Act provides procedures that may be used by a judgment creditor in registering a foreign judgment in the Isle of Man. *See* Ex. 3, Foreign Judgments Act, § 2.[3] Pursuant to Section 4 of the Foreign Judgments Act, the registration of a foreign judgment must be set aside if the registering Isle of Man court finds that "the original court had no jurisdiction in the circumstances of the case . . . ." *Id.* at § 4(1)(ii). For the purposes of this section, the original court is deemed to have had personal jurisdiction over the Isle of Man judgment debtor:

> "(i) if the judgment debtor, being a defendant in the original court, submitted to the jurisdiction of that court by voluntarily appearing in the proceeding . . . ; or
>
> (ii) if the judgment debtor was a plaintiff in, or counter-claimed in, the proceeding in the original court; or
>
> (iii) if the judgment debtor, being a defendant in the original court, had before the commencement of the proceedings agreed, in respect of the subject matter of the proceedings, to submit to the jurisdiction of that court or of other courts of the country of that court; or
>
> (iv) if the judgment debtor, being a defendant in the original court, was at the time when the proceedings were instituted [a] resident in, or being a body corporate had its principal place of business in, the country of that court; or
>
> (v) if the judgment debtor, being a defendant in the original court, had an office or place of business in the country of that court and the proceedings in that county were in respect of a transaction effected through that office or place of business . . . ."

*Id.* at § 4(2)(a)(i)-(v).

---

[2] *See* http://www.opsi.gov.uk/RevisedStatutes/Acts/ukpga/1979/cukpga_19790058_en_1#l1g7 for full text of the Isle of Man Act of 1979.

[3] *See* http://www.opsi.gov.uk/RevisedStatutes/Acts/ukpga/1933/cukpga_19330013_en_1 for full text of the Foreign Judgments Act.

It is clear that Argo does not meet any of these personal jurisdiction requirements: Argo has not submitted to the jurisdiction of this Court by voluntarily appearing in this proceeding; Argo is not a plaintiff in this proceeding nor has it counterclaimed in this proceeding; Argo has not, with respect to the subject matter of this proceeding, submitted to the jurisdiction of this Court or any other court in the United States; Argo's principal place of business is not in the United States, nor does Argo have an office or place of business in the United States. Ex. 1 at ¶ 7. Thus, if the Court were to exercise personal jurisdiction over Argo in Colorado, any judgment rendered in favor of Plaintiff would be unenforceable against Argo in the Isle of Man.

This is not to say that Plaintiff cannot obtain any recovery against Argo if it can establish under whatever theory it pursues that Argo is liable for the debts of the ACM Defendants. Plaintiff must simply file its claim in a forum where the exercise of personal jurisdiction over Argo is proper. This Court is clearly not that forum.

## II.    THE AMENDED COMPLAINT AGAINST ARGO SHOULD BE DISMISSED PURSUANT TO F.R.C.P. 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM OF SUCCESSOR LIABILITY.

### A.    Grounds for Dismissal

Plaintiff attempts to impose successor liability against Argo under two separate theories: the mere continuation exception and the transfer of assets for fraudulent purposes exception. The mere continuation exception, however, requires that the transfer of assets result in the existence of a single corporation. Plaintiff has not and cannot allege the existence of such an entity. In fact, the Amended Complaint expressly recognizes the existence of both ACM and Argo. As a result, Plaintiff fails to state a claim of successor liability based upon the mere continuation exception.

Similarly, Plaintiff fails to state a claim under the transfer for fraudulent purposes exception. Such a claim is subject to F.R.C.P. 9(b), which requires the circumstances of fraud be

pled with particularity.  The Amended Complaint is simply devoid of any such particular

allegations relating to Argo.

### B.    Burden of Proof

Plaintiff bears the burden of establishing the elements of a claim of successor liability.

*See, e.g., National Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 266 (7th Cir.

1996).  "In reviewing a motion to dismiss, this court must look for plausibility in the complaint."

*Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (internal quotations omitted). "Under

this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on

its face.'" *Id. (quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  In the Tenth

Circuit, this means that "[t]he allegations must be enough that, if assumed to be true, the plaintiff

plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242,

1247 (10th Cir. 2008); *see also Edge v. Ed Payne*, Civ. No. 08-7122, 2009 WL 2562733, *2

(10th Cir. August 20, 2009).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations and quotations omitted).

### C.    Elements of Successor Liability Claim

Generally, a corporation that acquires the assets of another corporation does not become

liable for the debts of the selling corporation.  *Baca v. Depot Sales, LLC*, Civ. No. 06-cv-00714-

EWN-PAC, 2007 WL 988061, * 3 (D. Colo. March 30, 2007) (citing *CMCB Enter., Inc. v.

Ferguson*, 114 P.3d 90, 92 (Colo. Ct. App. 2005).  However, a successor corporation may be

held liable if: "(1) there is an express or implied assumption of liability; (2) the transaction results in a merger or consolidation of the two corporations; (3) the purchaser is a mere continuation of the seller; or (4) the transfer is for fraudulent purposes." *Id.* Here, Plaintiff alleges successor liability based on the mere continuation and fraudulent purpose exceptions. *See* Amended Complaint at ¶¶ 101-102.

> **D.** **Argument**
>
> > 1. Plaintiff Has Not Alleged And Cannot Establish Facts Sufficient To Demonstrate That Argo Is A Mere Continuation Of ACM.

The test for the application of the mere continuation exception is "whether the purchasing corporation is, in effect, a continuation of the seller's business operations." *Baca*, 2007 WL 988061 at *3. Thus, "under the common law mere continuation theory, successor liability attaches when the plaintiff demonstrates the existence of a single corporation after the transfer of assets, with an identity of stock, stockholders, and directors between the successor and predecessor corporations." *Graham v. James*, 144 F.3d 229, 240 (2d Cir. 1998); *see also Centimark Corp., v. A to Z Coatings & Sons*, Civ. No. 08-10359, 2008 WL 2909299, * 3 (11th Cir. July 30, 2008) ("Mere continuation occurs when one corporation is absorbed by another . . . ."); *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir. 1977) ("The indicia of continuation are a common identity of stock, directors, and stockholders and the existence of only one corporation at the completion of the transfer.").

In asserting successor liability based on the mere continuation exception, Plaintiff alleges that Argo is "merely a continuation of the debt and real estate fund business of ACM" and that "the same persons responsible for ACM's debt and real estate fund management before the Argo Spinoff continued to manage the debt and real estate funds after the Spinoff, for the benefits of the exact same shareholders of ACM who had become shareholders of Argo . . . ." Amended

Complaint at ¶ 101. Plaintiff's allegations fall well short of alleging a mere continuation and fail to allege an essential element of the claim—the existence of a single corporate entity after the transaction at issue. Nor can Plaintiff provide any facts which establish that ACM was absorbed by Argo following the transaction. Both ACM and Argo exist today as separate entities, with separate operating and business objectives, and different shareholders. Indeed, Plaintiff has filed claims against both ACM and Argo thereby acknowledging that both entities continue to exist.

Because Plaintiff has not alleged and cannot establish the existence of a single corporate entity after the transfer of assets from ACM to Argo, Plaintiff cannot establish facts sufficient to demonstrate that Argo is a mere continuation of ACM. Plaintiff has failed to state a claim of successor liability claim based on the mere continuation exception.

> 2. <u>Plaintiff Has Not Pled With Particularity Facts Giving Rise To Successor Liability Based On The Transfer For Fraudulent Purposes Exception.</u>

The test for the application of the transfer for fraudulent purposes exception is whether the transfer or sale at issue was for the seller's "fraudulent purpose of escaping liability." *City and County of Denver v. Adolph Coors Co.*, 813 F. Supp. 1471, 1474 (D. Colo. 1992). In asserting a successor liability claim based on this exception, the plaintiff must plead "specific facts giving rise to the fraud theory with particularity, consistent with Fed. R. Civ. P. 9(b)." *Infra-Metals, Co. v. Topper & Griggs Group, Inc.*, Civ. No. 3:05-CV-559, 2005 WL 3211385, *3 n.7 (D. Conn. Nov. 30, 2005) (citing *Ricciardello v. J.W. Gant & Co.*, 717 F. Supp. 56, 59 (D. Conn. 1989)); *see also Apace Communications, Ltd. v. Burke*, 522 F. Supp. 2d 509, 522 (W.D.N.Y. 2007) (holding that successor liability claim based on an alleged fraudulent transfer of assets is "subject to dismissal under Rule 9(b)."). Although Rule 9(b) does not require any particularity with respect to intent, knowledge, or condition of the mind, it does require "identification of the circumstances constituting fraud or mistake." *Seattle-First Nat. Bank v.*

*Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986) (quoting *Trussell v. United Underwriters, Ltd*,

228 F. Supp. 757, 774-75 (D. Colo. 1964). It has long been established that conclusory

allegations, without more, are insufficient. *Burke v. Woods*, Civ. No. 95-6094, 1996 WL 223731,

* 4 (10th Cir. May 3, 1996). Today, the application of *Twombly* requires even more. As

discussed above, a plaintiff must plead a *plausible* claim for relief. Plaintiff has not done so

here.

In asserting successor liability based on the transfer for fraudulent purposes exception,

Plaintiff simply states that the intent behind ACM's transfer of assets to Argo was to shield

ACM's largest asset from alleged liability to Plaintiff for securities fraud. *See* Amended

Complaint at ¶¶ 63, 67-68, 102. However, to meet the heightened pleading requirement of Rule

9(b), Plaintiff was required to plead facts which specifically support a finding that the transfer of

assets from ACM to Argo was for fraudulent purposes.

In *JSB Industries, Inc. v. Nexus Payroll Services, Inc.*, 463 F. Supp. 2d 103, 109 (D.

Mass. 2006), the plaintiff alleged that the selling corporation's most valuable asset had been sold

to the successor in an effort to hinder, delay or defraud creditors. The court held that this

allegation was "simply insufficient to support a theory of successor liability based on fraud"

because the complaint was "completely devoid of any supporting factual allegations." *Id.* at 110-

11. "For example, there [were] no allegations to the effect that any price [the successor] may

have paid for [the asset] was unreasonable" or that the sale "was an effort by [the selling

company] to change its corporate form to escape liability." *Id.* The court thus dismissed the

plaintiff's successor liability claim for failure to satisfy Rule 9(b). *Id.* at 111.

Similarly, in *Ferguson v. Arcata Redwood Co., LLC*, Civ. No. C03-05632 SI, 2004 WL

2600471, *5 (N.D. Cal. Nov. 12, 2004), the plaintiff alleged that the transfer of assets "was

otherwise fraudulent, or intended to avoid potential liability" by the transferring company. *Id.*
The court held that "plaintiff ha[d] not stated a claim upon which successor liability can be
established under the fraudulent transaction exception." *Id.* In so holding, the court specifically
noted that the plaintiff failed to plead any facts to support her claim, such as "the sufficiency of
the consideration given for the sale, the insufficient assets of the selling company, or intent by
either the purchaser or seller to construct the sale solely to avoid [] liability . . ." *Id.*; *see also
Cargo Partner AG v. Albatrans Inc.*, 207 F. Supp. 2d 86, 115 (S.D.N.Y.,2002) (finding that
plaintiff's claim of successor liability based on the transfer for fraudulent purposes exception did
not meet the heightened pleading requirement of Rule 9(b) where plaintiff did not allege facts to
support its assertion that a transfer of assets was for inadequate consideration and rendered the
transferring company insolvent).

Plaintiff's claim of successor liability based on the transfer for fraudulent purposes
exception is analogous to the claims in *JSB Industries* and *Ferguson*. Like the plaintiffs in those
cases, Plaintiff makes only broad, conclusory statements regarding the allegedly fraudulent
transfer by ACM to Argo *without providing any factual support*. Indeed, Plaintiff only alleges
that the transfer at issue was for fraudulent purposes without alleging, for example, that
insufficient consideration was given for the transfer or that the transfer rendered ACM insolvent.
*See generally* Amended Complaint. In fact, the Amended Complaint asserts that ACM received
reasonable equivalent value in exchange for the transfer of assets to Argo. Amended Complaint
at ¶ 61 ("In April 2008, ACM and Argo Group entered into an agreement under which ACM
transferred its ownership of Argo Capital and the related Argo entities to the new entity, Argo
Group. In return, ACM received stock in Argo Group with a stated value of 21,453,289 euros.").

Plaintiff's inability to allege a specific fraudulent purpose is highlighted by the fact that the transfer of assets at issue was disclosed to the public in April 2008, in full light and subject to scrutiny and oversight by foreign regulatory authorities. Despite Plaintiff's knowledge of this public transaction and its claimed "fraudulent purpose," Plaintiff did not allege such a claim in its initial complaint filed on June 30, 2008, (two months after the transaction) (Dkt. No. 1), instead waiting nearly ten months to assert this claim against Argo.

Rule 9(b)'s requirement that circumstances of fraud be pled with particularity has not been met by Plaintiff. As a result, Plaintiff has failed to state a claim of successor liability against Argo based on the transfer of assets for fraudulent purposes exception.

3.    <u>Plaintiff Has Failed To State A Claim Under The Securities And Exchange Act, And Has Thus Failed To State A Claim Of Successor Liability.</u>

Argo incorporates herein the argument set forth in Section III of ACM Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 46) that Plaintiff has failed to state a claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5. Plaintiff's successor liability claim against Argo is dependent on Plaintiff's claim that the ACM Defendants violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5. Because Plaintiff has failed to state a claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5, Plaintiff has also failed to state a claim against Argo for successor liability.

For the reasons set forth herein, this Court should dismiss Argo from this lawsuit pursuant to F.R.C.P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim, respectively.

DEN-14239-3                                              25

Dated this 16th day of September, 2009.

Respectfully submitted,

HUSCH BLACKWELL SANDERS LLP

By:    /s/ Matthew J. Smith
          Matthew J. Smith
          Sudee Mirsafian Wright
          1700 Lincoln, Suite 4700
          Denver, Colorado 80203
          Telephone:  (303) 749-7200
          Facsimile:  (303) 749-7272
          Matt.Smith@huschblackwell.com
          Sudee.Wright@huschblackwell.com
          *Attorneys for Defendant Argo Group Limited*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 16th day of September, 2009, a true and correct copy of the foregoing **DEFENDANT ARGO GROUP LIMITED'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND JURY DEMAND FOR LACK OF PERSONAL JURISDICTION** was served electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Daniel F. Wake
SANDER INGEBRETSEN & WAKE, P.C.
1660 17th Street, Suite 450
Denver, Colorado 80202
Telephone: 303-285-5544
Facsimile: 303-285-5301
dwake@siwlegal.com

George W. Croner
KOHN, SWIFT & GRAF, P.C.
One south Broad Street, Suite 2100
Philadelphia, Pennsylvania 19107
Telephone: 215-238-1700
Facsimile: 215-238-1968
gcroner@kohnswift.com

John V. McDermott
Amy L. Benson
Meghan Frei Berglind
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, suite 2200
Denver, Colorado 80202
Telephone:  303-223-1100
Facsimile:  303-223-1111
abenson@bhfs.com
jmcdermott@bhfs.com
mberglind@bhfs.com

*/s/ Diane Sharp*_____