**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 2008-cv-01381-MSK-CBS

THE CASCADE FUND, LLLP,
on behalf of itself and a
class of similarly situated persons,

      Plaintiff,

v.

ABSOLUTE CAPITAL MANAGEMENT HOLDINGS LIMITED;
ABSOLUTE GENERAL PARTNER LIMITED;
FLORIAN HOMM;
SEAN EWING;
JOHN A. FLEMING;
RONALD E. TOMPKINS;
ULLRICH ANGERSBACH, and
ARGO GROUP LIMITED

      Defendants.

---

**PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT
JURISDICTIONAL DISCOVERY OF DEFENDANT ARGO GROUP LIMITED**

---

Plaintiff, The Cascade Fund LLLP ("Cascade"), on behalf of itself and a class of similarly situated United States investors, requests leave to conduct limited jurisdictional discovery in order to respond to Defendant Argo Group Limited's Motion to Dismiss ("Argo Group's Motion") for lack of personal jurisdiction. In support, Cascade states as follows:

Pursuant to D.C.COLO.LCivR 7.1, counsel for Plaintiff has conferred with Argo Group's counsel regarding jurisdictional discovery, but Argo Group opposes the relief requested.

## BACKGROUND

This case involves an international securities fraud conducted primarily by Argo Group's predecessor, Defendant Absolute Capital Management Holdings ("ACM") and its key personnel, including Florian Homm.[1]  As explained in Plaintiff's First Amended Complaint, ACM managed about $2 billion in assets in several hedge funds (the "Absolute Capital Funds" or "Funds"). Most of the Funds purported to invest in European companies, consistent with the touted expertise of ACM's European principals, including Homm.

Unbeknownst to the Funds' investors, however, Homm had a secret arrangement with a small penny-stock promoter and brokerage firm in Los Angeles called Hunter World Markets ("Hunter").  Homm owned 50% of Hunter.  Homm steered half a *billion* dollars of the Absolute Capital Funds' monies into the purchase of highly speculative American penny stock companies promoted and sold by Hunter in the United States.  As half owner of Hunter, Homm secretly made millions through this arrangement.

Absolute Capital's investments in these American penny stocks suffered enormous losses.  Homm and ACM, however, hid these losses for years by carrying the penny stock investments on the Absolute Capital Funds' balance sheets at the prices paid to acquire them – not at their true value.  Thus, as the penny stocks cratered, investors were deceived by net asset valuations that greatly overstated the fair value of these penny stocks.

In September 2007, Homm and Ewing suddenly resigned.  Homm has gone into hiding and remains at large.  ACM revealed in a September 19, 2007 press release that the Absolute Capital Funds' investments in illiquid "US-based Over the Counter Bulletin Board/Pink Sheet"

---

[1] Absolute Capital has changed its name to ACMH Limited.  For ease of reference, Cascade will use ACM, as it has in all prior briefs.

stocks were approximately $440 million to $530 million of the equity funds' assets.  ACM revealed that these purchases of U.S. penny stocks constituted as much as 45% of the entire portfolios of some of the Absolute Capital Funds.  The sudden revelations caused the Absolute Capital Funds to plunge in value.

Plaintiff filed this case under the Securities Exchange Act on behalf of itself and other U.S-based investors in the Absolute Capital Funds.  (Cascade alone invested $1.4 million in the Funds and suffered losses of approximately $660,000.)  ACM and other defendants located in the Cayman Islands filed a three-part motion to dismiss, including a motion to dismiss under Fed.R.Civ.P.12(b)(2) for alleged lack of personal jurisdiction.  Counsel for Cascade and counsel for ACM thereafter negotiated in good faith and reached agreement on the scope of limited jurisdictional discovery to be provided by ACM so that Cascade could respond to ACM's motion to dismiss on jurisdictional grounds.  ACM provided that jurisdictional discovery.  ACM's motion to dismiss is now fully briefed and is pending before the Court.

**ACM Transferred Virtually All Its Assets to a Newly Created Subsidiary, Defendant Argo Group, Which Now Claims it is Not Subject to Jurisdiction in the United States.**

Within months of the announcement in September 2007 and the sudden collapse of the market values of the Absolute Capital Funds, defendant ACM created a new subsidiary called Argo Group Limited, transferred virtually all of ACM's assets to the new subsidiary, then spun off the subsidiary to ACM's shareholders in a transaction that Cascade contends was plainly fraudulent and plainly designed to insulate its assets from the reach of defrauded investors.

More specifically, Defendant Argo Group was formed in the Isle of Man in February 2008.  In April 2008, ACM transferred all its stock in *other* subsidiaries to the newly formed

Argo Group in exchange for Argo Group's common stock. In May 2008, ACM agreed to distribute to its shareholders the common stock of the newly formed Argo Group, which common stock ACM had received from Argo Group only days before.

In June 2008, ACM's shareholders formally approved the distribution of the newly created Argo Group stock *to themselves*. As alleged in Cascade's First Amended Complaint, ACM's stock price dropped by about 80% almost immediately after ACM's shareholders approved of this device to strip ACM of its assets (but not from the same shareholders' collective ownership). Through this spinoff from ACM, Argo Group became an ostensibly independent entity, but one owned by the same shareholders in the same proportions as ACM.

ACM then issued financial statements for the period ended June 30, 2008 – barely two weeks after the Argo spinoff. ACM noted that if legal claims arose as a result of the Homm/Hunter World Markets fraud, ACM "may not have adequate resources to defend these claims *or settle any successful claims which may arise*." In other words, the financial statements revealed that "successful claims" would cause ACM to "cease to be a going concern" -- because ACM had just transferred virtually all its assets to Argo Group.

In light of this highly suspicious transaction, Cascade amended its complaint to assert claims against Argo Group for successor liability and as the transferee of assets that previously had been subject to the claims of defrauded investors. After receiving two unopposed extensions of time in which to respond, Argo Group filed its motion to dismiss, including its challenge to personal jurisdiction in the United States. Agro Group's Motion includes evidence outside the pleadings in support of its jurisdictional argument.

## CASCADE'S REQUEST FOR LIMITED JURISDICTIONAL DISCOVERY

### 1. **Jurisdictional Discovery Is Proper to Respond to a Rule 12(b)(2) Motion.**

The Tenth Circuit long ago explained in a case challenging personal jurisdiction that "[w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion." *Budde v. Ling-Temco-Vought, Inc.,* 511 F.2d 1033, 1035 (10th Cir. 1975); *cf. Sizova v. Nat'l Inst. of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002) (applying same rule to motion to dismiss for lack of subject matter jurisdiction). This Court has often allowed urisdictional discovery when a defendant moves to dismiss for lack of jurisdiction. *See, e.g., Ernest v. Lockheed Martin Corp.*, 2008 WL 927665 (D. Colo. April 4, 2008) (concerning subject matter jurisdiction); *DC Aviation, LLC v. Avbase Flight Services*, *LLC*, 2008 WL 373175 (D.Colo. Feb. 8, 2008) (concerning personal jurisdiction); *SGI Air Holdings II LLC v. Novartis International, AG*, 239 F.Supp. 2d 1161, 1163 (D.Colo. 2003) (concerning personal jurisdiction). *Accord, Central States Pension Fund v. Phencorp Reinsurance Co., Inc*., 440 F.3d 870, 878 (7th Cir. 2006) (reversing trial court's refusal to allow jurisdictional discovery, noting that "[s]ince Central States was denied the opportunity to engage in discovery, it is not surprising that it can do little more than suggest that Phencorp currently has minimum contacts with the United States"); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 675 (D.C.Cir. 1996) ("A plaintiff faced with a motion to dismiss for lack of personal jurisdiction is entitled to reasonable discovery, lest the defendant defeat the jurisdiction of a federal court by withholding information on its contacts with the forum").

Accordingly, Cascade is entitled to conduct jurisdictional discovery before responding to Argo Group's Motion, just as Cascade conducted jurisdictional discovery, by agreement, from

ACM before responding to ACM's motion to dismiss. The question then is, *what* discovery is appropriate when a defendant facing *successor liability* challenges personal jurisdiction?

> **2.    Courts Have Made Clear That The Determination of Personal Jurisdiction Over a Successor Entity Overlaps With the Substantive Issue of Successor Liability.**

As noted, the Argo Group spinoff was first orchestrated in February 2008, shortly after the disclosure of the fraudulent activities of Homm and Hunter World Markets. Argo Group formally received virtually all of ACM's assets in June 2008. Argo Group's Motion argues that Argo Group lacks traditional "contacts" with Colorado or the United States, and that ACM's contacts with the United States cannot be attributed to Argo. While it is understandable that Argo Group would cast the jurisdictional argument in that fashion – after all, Argo Group did not even *exist* when ACM and Homm were defrauding members of the class – courts have firmly rejected that tactic.

Cascade's claims against Argo Group derive from the fact that Argo Group was cloned from, and is the successor to, defendant ACM. In that unique situation, courts have rejected the exact jurisdictional argument raised by Argo Group because a successor, virtually by definition, stands in the jurisdictional shoes of its predecessor. Indeed, "the jurisdictional contacts of a predecessor corporation [are imputed] to its successor corporation …." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002) (and cases cited therein). Thus,

> federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego *or successor* of a corporation that would be subject to personal jurisdiction in that court. *Id.* (Emphasis added.)

In short, "the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Id*. (Emphasis in original.)

Accordingly, "the great weight of persuasive authority permits imputation of a predecessor's actions upon its successor *whenever* forum law would hold the successor liable for its predecessor's actions …." *Simmers v. American Cyanimid Corp.,* 576 A.2d 376, 385 (Pa. Sup. 1990), *allocatur denied,* 593 A.2d 421 (Pa. 1991) (emphasis in original). Any other result would reward corporate gamesmanship of transferring assets to evade personal jurisdiction:

> Plaintiff must be permitted to establish jurisdiction over a successor corporation based upon its predecessor's contacts with the forum. Otherwise, a corporation which voluntarily or by the operation of law assumes its predecessor's liabilities may be able to avoid the jurisdiction of the very forum where the liability accrued simply because it never did business within that state. This result would be absurd, especially when … the successor no doubt had knowledge of the predecessor's presence within the forum. *Id*. at 389-90.

*Accord, Duris v. Frato Shipping*, 684 F.2d 352, 356 (6th Cir. 1982) ("Any other ruling would allow corporations to immunize themselves by formalistically changing their titles"); *cf. Minnesota Mining & Mfg. Co. v. Ecochem, Inc.,* (if successor in interest subject to Rule 25(c) motion were not subject to imputed personal jurisdiction of its predecessor, "the owners of the property could merely transfer legal ownership of the assets from one shell corporation to another in a different jurisdiction, putting a party whose initial suit satisfied the jurisdictional requirements to the immense burden of chasing the involved assets from courtroom to courtroom").

As a result, personal jurisdiction over Argo Group in this case has nothing to do with Argo's traditional "contacts" with the forum.[2] Instead, to establish personal jurisdiction over Argo, Cascade "need only make a prima facie showing" of Argo Group's liability as a successor to ACM. *See United States v. Bliss,* 108 F.R.D. 127, 133 & n.2 (W.D.Mo. 1985). Thus, to a degree,

> a finding of jurisdiction turns on the resolution of a substantive issue. In recognition of that, at such an early stage in a case, a plaintiff should not be expected to prove such facts with the same degree of certainty required on a summary judgment motion or at a trial, the *prima facie* burden is satisfied if the documents submitted demonstrate facts sufficient to support a finding of jurisdiction. *Huth v. Hillsboro Ins. Mgmt,* 72 F.Supp.2d 506, 511 (E.D.Pa. 1999) (internal citations and quotations omitted).

*Accord, Simmers,* 576 A.2d at 386 n.11 (court will "make the preliminary determination of whether, based on the facts as they have been developed at this early stage of litigation, the successor corporations should stand in the shoes of their predecessors").

Here, in order to establish personal jurisdiction over the cloned entity (Argo Group), Cascade needs to make a "prima facie" or "preliminary" showing on the merits of successor liability. In turn, therefore, Cascade's limited jurisdictional discovery must be allowed to address the merits of successor liability. This unusual structure, in which personal jurisdiction turns on a substantive issue and not on "contacts" with the forum, is fairly unique but also well-established. If it were not so, defendants could shield assets through precisely the type of gamesmanship seen here.[3]

---

[2] As agreed by ACM and Cascade in the briefing on ACM's Motion to Dismiss, ACM's contacts with the entire United States were relevant due to the nationwide service of process under the Securities Exchange Act.

[3] Cascade agrees with Argo Group that if ACM is not subject to personal jurisdiction in Colorado, then the Argo Group's successor liability would not subject it to personal jurisdiction in Colorado either. However, for all the reasons stated in Plaintiff's Opposition to the ACM Defendants' Motion to Dismiss the First Amended Complaint,

As described in Argo Group's Motion at 21, there are several ways to establish a successor relationship between an entity and the recipient of its assets. Argo Group can be liable for ACM's fraud if, for example, (1) there is an express or implied assumption of liability, (2) the transaction results in a merger or consolidation of the two corporations, (3) the purchaser is a mere continuation of the seller, or (4) the transfer is for fraudulent purposes. By filing a motion to dismiss on jurisdictional grounds, Argo Group has put precisely these issues into consideration "at such an early stage." *Huth, supra.* Thus the proper <u>scope</u> of jurisdictional discovery as to Argo Group concerns the transaction by which Argo Group received virtually all of ACM's assets. Argo Group's "contacts" with the forum are irrelevant, meaning that discovery on Argo Group's "contacts" with the forum is needless.

Cascade's proposed jurisdictional discovery in Exhibit A – only 7 document requests and 2 interrogatories – is a good faith attempt to allow Cascade to address the "preliminary" successor issue on the merits, while remaining mindful that, at this early stage, a lesser degree of certainty on the issue of successor liability is all that is required. Needless to say, full discovery on the merits of successor liability would be far more substantial than the limited discovery included in Exhibit A. For example, full discovery on the merits would include depositions of all key personnel involved in the ACM/Argo Group spinoff, more extensive document requests and interrogatories, requests for admissions, discovery of ACM on the successor issue, third-party discovery and potentially more. Cascade recognizes that this more comprehensive discovery must await resolution of the threshold matter of successor personal jurisdiction and, accordingly, has fashioned the more limited requests found in Exhibit A.

---

Cascade believes personal jurisdiction over ACM in this Court is manifest. Accordingly, Argo is likewise subject to jurisdiction here as long as Cascade can make a preliminary showing of successor liability.

Argo Group has taken the position that Cascade's proposed jurisdictional discovery is improper precisely because it relates to the merits, and that Cascade should be limited to discovery concerning Argo Group's "contacts" with the forum. As discussed above and as explained in the cases addressing the personal jurisdiction of a successor, however, Argo Group is incorrect. By challenging personal jurisdiction, Argo Group has chosen to put into play the issue of its successor liability. Having made that voluntary election, Argo Group cannot shield itself from the discovery that attends a prima facie inquiry of that issue by barricading itself against limited jurisdictional discovery "on the factual issues raised by that motion." *Budde,* 511 F.2d at 1035.

## CONCLUSION

Wherefore, for the foregoing reasons, Cascade requests leave to serve on Argo Group the limited jurisdictional discovery requests attached as Exhibit A.

Dated: October 22, 2009.

Respectfully submitted,

**SANDER INGEBRETSEN & WAKE, P.C.**

By: s/Daniel F. Wake
 1660 17th Street, Suite 450
 Denver, CO  80202
 Telephone:  303-285-5544
 Facsimile:  303-285-5301
 dwake@siwlegal.com

10

George W. Croner
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: 215-238-1700
Facsimile: 215-238-1968
gcroner@kohnswift.com

**ATTORNEYS FOR PLAINTIFF THE CASCADE FUND, LLLP**

## CERTIFICATE OF SERVICE

  I hereby certify that on the 22nd day of October 2009, I electronically filed the foregoing **PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY OF DEFENDANT ARGO GROUP LIMITED** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Amy L. Benson  abenson@bhfs.com
John V. McDermott  jmcdermott@bhfs.com
Meghan Frei Berglind  mberglind@bhfs.com
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, #2200
Denver, CO 80202-4437

Matthew J. Smith  Matt.Smith@huschblackwell.com
Husch Blackwell Sanders LLP
1700 Lincoln, Suite 4700
Denver, CO  80203

                 s/ Patty Bates