**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 2008-cv-01381-MSK-CBS

THE CASCADE FUND, LLLP,
on behalf of itself and a
class of similarly situated persons,

      Plaintiff,

v.

ABSOLUTE CAPITAL MANAGEMENT HOLDINGS LIMITED;
ABSOLUTE GENERAL PARTNER LIMITED;
FLORIAN HOMM;
SEAN EWING;
JOHN A. FLEMING;
RONALD E. TOMPKINS;
ULLRICH ANGERSBACH; and
ARGO GROUP LIMITED

      Defendants.

---

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO CONDUCT LIMITED
JURISDICTIONAL DISCOVERY OF ARGO GROUP LIMITED**

---

In reply to Defendant Argo Group Limited's Opposition to Plaintiff's Motion For Leave to Conduct Jurisdictional Discovery of Defendant Argo Group Limited ("Argo Group's Opposition"), plaintiff The Cascade Fund LLLP ("Cascade") states as follows:

**ARGO GROUP'S ATTEMPT TO DIVORCE ITSELF FROM THE JURISDICTIONAL
CONTACTS OF ACM IS INEFFECTIVE**

The primary bases for imposing successor liability are well-established and are even cited in Argo Group's motion to dismiss (which motion in turn prompted Cascade to seek limited jurisdictional discovery). To summarize, successor liability is imposed, *inter alia,* when two entities engage in a *de facto* merger or consolidation, when the successor entity is a "mere

continuation" of the predecessor, or when a transfer of assets between two entities is a fraudulent conveyance. *See* Argo Group's motion to dismiss at 21. Cascade, to date, has alleged at least two of these acknowledged grounds for successor liability; *i.e.,* that Argo Group is a mere continuation of ACM, and that ACM's transfer of virtually all of its assets to Argo Group shortly after ACM's liability for fraud became apparent was a fraudulent conveyance. As explained in Cascade's motion for limited jurisdictional discovery, courts consistently recognize that if the contacts of the predecessor entity are not imputed to the successor in these situations, defendants will readily evade liability and deprive deserving plaintiffs of any meaningful remedy merely by shuffling assets in corporate legerdemain.

Argo Group does not deny the general principal that the jurisdictional contacts of a predecessor are imputed to a successor; instead, it argues at length that the rule for imputing jurisdictional contacts to a successor does not apply *in this particular case. See* Argo Group's Opposition at 7-14. To that end, Argo Group gleans a new rule that has never been announced by any court, *i.e.,* that jurisdictional contacts are imputed to a successor under *some* of the bases for successor liability, but not under others. Thus, Argo Group contends that jurisdictional contacts are imputed only if the successor entity is, in Argo Group's words, "the same corporate entity" as the predecessor, but *not* if successor liability is based on a fraudulent conveyance from the predecessor. Argo Group's Opposition at 8. Argo Group is quite wrong.

As noted, Argo Group cites no case for its distinction. To the contrary, "the great weight of persuasive authority permits imputation of a predecessor's actions upon its successor *whenever* forum law would hold the successor liable for its predecessor's actions …." *Simmers v. American Cyanimid Corp.,* 576 A.2d 376, 385 (Pa.Sup. 1990) (emphasis in original). Indeed,

2

this Court has imputed jurisdictional contacts of a predecessor to an alleged successor where successor liability was based on a fraudulent conveyance.  *DC Aviation, LLC v. Avbase Flight Services, LLC,* 2008 WL 373175 (D.Colo. Feb. 8, 2008).  Thus, Argo Group's contention that jurisdictional contacts are not imputed when successor liability is based on a fraudulent conveyance is mistaken.

Equally pertinent, Cascade also alleges that Argo Group is a mere continuation of the debt and real estate fund business of ACM.  First Amended Complaint ¶101.  "[T]he fact that the *entirety* of the predecessor's assets were not transferred to the successor does not render the mere continuation exception inapplicable."  *Patin v. Thoroughbred Power Boats, Inc*., 294 F.3d 640, 651 (5th Cir. 2002).  The key fact for imposing successor liability is the continuity of ownership between the predecessor and the successor – precisely as occurred here.  *See Cargo Partner AG v. Albatrans Inc*., 207 F.Supp.2d 86, 99-100 (S.D.N.Y. 2002).  Thus, ACM's jurisdictional contacts are properly imputed to Argo Group under the "mere continuation" theory whether or not successor liability is equally applicable on the theory of fraudulent transfer.

Finally, Cascade notes that Argo Group's Opposition confuses the issue at bar – jurisdictional discovery – with the resolution on the merits of its motion to dismiss.  Largely avoiding the damning implications of creating a new entity owned by the same ACM shareholders and then distributing virtually all ACM's assets to that new entity, Argo Group instead argues such legal conclusions as "Argo is not the corporate embodiment of ACM" (Argo Group's Opp. at 11) and "there is no continuation of the predecessor's business under a new name" (*id*. at 12).  But these are self-serving *conclusions* that purport to resolve the ultimate issues on successor liability; in the present posture of this case they simply serve to underscore

3

Cascade's need for limited discovery to ascertain whether the *facts* actually support the prepackaged conclusions that Argo Group has supplied to the Court. In other words, Argo Group cannot rely on legal conclusions yet deny limited discovery that would put those very conclusions to the test.

## CASCADE HAS EASILY MET THE THRESHOLD BURDEN FOR OBTAINING LIMITED JURISDICTIONAL DISCOVERY

Argo Group does not dispute that jurisdictional discovery is common when a defendant challenges personal jurisdiction, but contends that a plaintiff should not receive jurisdictional discovery merely for the asking. Cascade does not disagree. As the cases cited by Agro Group explain, however, a plaintiff's burden for justifying jurisdictional discovery in this situation is quite modest. *See First Horizon Merchant Serv. Inc. v. Wellspring Cap. Mgmt., LLC* (166 P.3d 166, 179 (Colo.App. 2007) (it is not an abuse of discretion "to require a plaintiff to assert facts sufficient to satisfy the trial court that discovery *might* reveal evidence showing personal jurisdiction") (emphasis added); *St. Paul Travelers Casualty v. Guaranty Bank & Trust Co.,* 2006 WL 1897173 at *4 (D.Colo. July 10, 2006) (denying jurisdictional discovery where "allegations in complaint do not demonstrate contacts that *might be sufficient* to establish personal jurisdiction") (emphasis added).

As is now clear, the jurisdictional issue turns not on Argo Group's contacts with the United States, but on Argo Group's successor relationship to ACM. Thus, the question (put in the best possible light for Argo Group) is whether Cascade's allegations show that discovery "might be sufficient" or "might reveal evidence" to help show a successor relationship – based either on the fraudulent transfer of ACM's assets to Argo Group or on the mere continuation of

4

ACM's business through Argo Group.  Cascade believes the answer to that question cannot reasonably be disputed.

Cascade's First Amended Complaint at ¶¶59-68 alleges that the Argo businesses became ACM's most valuable assets after the September 2007 disclosure of ACM's fraud, that within a few months the new Argo Group entity was formed for the sole purpose of receiving ACM's most valuable assets, that Argo Group was owned by the exact same shareholders who owned ACM, that the fraudulent conveyance decimated the value of defendant ACM and ostensibly removed the Argo businesses from the reach of defrauded investors, that ACM disclosed immediately after conveying its assets to Argo Group that ACM's viability as a going concern was put into doubt, that Argo Group knew that it could be subject to claims by investors defrauded by ACM, that Argo Group is the recipient of a fraudulent transfer of ACM's assets, and that Argo Group is a mere continuation of ACM's debt and real estate fund management business.  These detailed allegations certainly create a "reasonable inference" of a fraudulent transfer to impute personal jurisdiction, as this Court concluded in *DC Aviation, LLC, supra.* More to the point, these allegations provide substantial assurance that limited discovery into the Argo Group spinoff "might reveal evidence" to help show a *prima facie* case of successor liability, which in turn will establish personal jurisdiction over Argo Group.

As Argo Group concedes, factual allegations must be taken as true unless contradicted by defendant's affidavits, and all factual disputes must be resolved in favor of Cascade.  *See* Argo Group's Opposition at 4.  Notably, neither Argo Group's motion to dismiss nor its opposition to Cascade's request for limited jurisdictional discovery submits any evidence to contradict the factual allegations relevant to personal jurisdiction, *i.e.,* those upon which successor liability is

5

premised. In light of the very suspicious structure, timing, and results of the Argo Group spinoff, Cascade respectfully suggests it is undeniable that limited jurisdictional discovery into that dubious transaction at least "might" help further show a *prima facie* case of successor liability sufficient to defeat Argo Group's motion to dismiss.

### ARGO GROUP'S REMAINING OBJECTIONS TO THE AMOUNT AND TIMING OF JURISDICTIONAL DISCOVERY ARE WITHOUT MERIT.

In addition to the more substantive arguments addressed above, Argo Group briefly raises a few collateral objections to Cascade's proposed jurisdictional discovery. These objections should be rejected.

First, Argo Group's Opposition at 15 correctly points out that "only a *prima facie* showing is required" to defeat its jurisdictional motion to dismiss, and appears to argue that, given that light standard, Cascade should be able to defeat the motion to dismiss *without need for jurisdictional discovery.* To be sure, Cascade believes the motion to dismiss should be denied whether or not jurisdictional discovery is conducted. But that is not the point when, as here, a defendant interposes jurisdictional objections as part of its dispositive motion. Argo Group cannot assert its jurisdictional defense but then insist that Cascade is obliged to take its chances on overcoming that defense without the benefit of even limited discovery.

Second, Argo Group's Opposition at 16 argues that the seven document requests and two interrogatories Cascade seeks to serve constitute "extremely broad discovery" that is "sweeping and burdensome." Argo Group goes so far as to argue that full discovery on the merits of Cascade's multi-million dollar successor liability claims against Argo Group would include *nothing more* than these nine discovery requests, and that therefore Cascade is using Argo Group's jurisdictional motion as a charade to obtain "full discovery." This argument is baseless.

6

To the contrary, the reasonable scope of the proposed discovery is self-evident and is limited solely to the very issues that Argo Group insists negate successor liability as a basis for the Court's exercise of personal jurisdiction. The far wider range of likely full discovery on the merits is equally self-evident, as briefly referenced in Cascade's Motion to Conduct Limited Jurisdictional Discovery of Argo Group Limited at 9.[1]

Finally, Argo Group's Opposition at 16-17 argues that jurisdictional discovery of Argo Group should be postponed indefinitely until the Court resolves ACM's pending motion to dismiss for alleged lack of personal jurisdiction. Given Argo Group's already pronounced strategy of delay, it is worth putting this request for further delay into context:

-In February 2009, Cascade filed its First Amended Complaint, in which successor liability is asserted against Argo Group.

-On March 9, 2009, Cascade mailed the summons and First Amended Complaint to Argo Group in England along with a request for waiver as contemplated by Fed.R.Civ.P. 4(d). Cascade gave Argo Group 60 days to return the waiver, as is required by Rule 4(d)(1)(F).

-In May 2009, the 60 days expired with Argo Group having failed to return the requested waiver or initiate any contact whatsoever regarding the lawsuit. With Argo having frustrated Cascade's effort to satisfy service through the less costly means provided by the Federal Rules, Cascade was obliged to pursue service by more traditional and expensive means.

-On July 7, 2009, Cascade effected personal service on Argo Group by service upon Argo Group's designated representative in the Isle of Man.

-On July 27, 2009, Argo Group requested and received (without opposition from Cascade) an extension in which to respond to the First Amended Complaint.

-On August 14, 2009, Argo Group requested and received (again without opposition) a second extension in which to respond to the First Amended Complaint.

---

[1] Of course, it was Argo Group's decision to challenge personal jurisdiction in the face of the highly suspicious spinoff that suggests successor liability. Having done so, Argo Group cannot complain about the discovery inconvenience that flows directly from that decision.

As a result, nearly nine months have passed since Cascade first requested Argo Group to waive service under Rule 4(d).  Under Argo Group's latest suggestion of delay, Cascade and the class should accept further indeterminate delay before conducting even limited jurisdictional discovery which delay, in turn, would only further postpone the briefing and resolution of Argo Group's motion to dismiss, which in turn would further frustrate the class' ability to prosecute its case against Argo Group.  In substance, therefore, Argo Group now seeks an indefinite stay of all proceedings against it – even jurisdictional proceedings.  There is no basis to stay the Argo Group proceedings, however.  Investors should not have to suffer still further, indefinite delays in litigating their claims against Argo Group.

WHEREFORE, for the foregoing reasons, Cascade respectfully requests leave to serve upon Argo Group the limited jurisdictional discovery attached to its motion.

Dated:  November 30, 2009.

           Respectfully submitted,

           **SANDER INGEBRETSEN & WAKE, P.C.**

           By: s/Daniel F. Wake
              1660 17th Street, Suite 450
              Denver, CO  80202
              Telephone:  303-285-5544
              Facsimile:  303-285-5301
              dwake@siwlegal.com

        George W. Croner
**KOHN, SWIFT & GRAF, P.C.**
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:  215-238-1700
Facsimile:  215-238-1968
gcroner@kohnswift.com

ATTORNEYS FOR THE CASCADE FUND, LLLP
 on behalf of itself and a class of similarly situated persons

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of November 2009, I electronically filed the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY OF ARGO GROUP LIMITED** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Amy L. Benson**  abenson@bhfs.com
**John V. McDermott**  jmcdermott@bhfs.com
**Meghan Frei Berglind**  mberglind@bhfs.com
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, #2200
Denver, CO 80202-4437

Matthew J. Smith  Matt.Smith@huschblackwell.com
Husch Blackwell Sanders LLP
1700 Lincoln, Suite 4700
Denver, CO  80203

        s/ Patty Bates