## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 2008-cv-01381-MSK-CBS

THE CASCADE FUND, LLLP,
on behalf of itself and a
class of similarly situated persons,

      Plaintiffs,

v.

ABSOLUTE CAPITAL MANAGEMENT HOLDINGS LIMITED;
ABSOLUTE GENERAL PARTNER LIMITED;
FLORIAN HOMM;
SEAN EWING;
JOHN A. FLEMING;
RONALD E. TOMPKINS;
ULLRICH ANGERSBACH; and
ARGO GROUP LIMITED,

      Defendants.

---

## DEFENDANT ARGO GROUP LIMITED'S REPLY IN SUPPORT OF
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Defendant Argo Group Limited, through its undersigned counsel and pursuant to Fed. R.

Civ. P. 12(b)(2) and 12(b)(6), hereby submits this reply in support of its motion to dismiss the

First Amended Complaint and Jury Demand ("Amended Complaint") for lack of personal

jurisdiction and failure to state a claim, respectively.

## INTRODUCTION

In a misguided and improper attempt to expand this lawsuit to include those it perceives

to have "deep pockets," Plaintiff Cascade Fund, LLLP ("Plaintiff") amended its complaint to

allege that Defendant Argo Group Limited ("Argo") is liable for the debts and actions of

Defendant Absolute Capital Management Holdings Limited ("ACM"). Plaintiff's attempt falls short, however, because Plaintiff has not alleged, and cannot allege, the limited circumstances under which a corporation that acquires the assets of another becomes liable for the debts of the selling corporation. In addition, because Plaintiff fails to establish that Argo is liable as ACM's successor – the sole basis upon which Plaintiff now claims personal jurisdiction over Argo – Argo is not subject to this Court's jurisdiction. Furthermore, any judgment obtained by Plaintiffs in this Court against Argo would not be enforceable in the Isle of Man. Simply put, Plaintiff has sued the wrong party in the wrong court.

In its initial complaint, Plaintiff asserted securities fraud claims against ACM and others to recover the decrease in value of its interests in various companies organized under and governed by the laws of the Cayman Islands (the "Absolute Funds"). Over a year after initiating this action, Plaintiff sought to amend its complaint to bring a claim for successor liability against Argo. Plaintiff alleges that in January 2007, ACM acquired three hedge funds focused on debt securities (the "Argo Funds"). *See* Amended Complaint, ¶59. In February 2008, Argo was formed by ACM in the Isle of Man to act as a holding company for the operating businesses (the "Argo Companies" or the "Argo Business") which manage the Argo Funds. *See id.* at ¶61. In April 2008, ACM reorganized its holding of the Argo Companies by entering into an Intra-Group Share Sale and Purchase Agreement (the "Sale Agreement") with Argo whereby ACM agreed to transfer its ownership of the Argo Companies to Argo in exchange for stock in Argo. *See id*. Accordingly, as a result of the Sale Agreement, ACM held stock in Argo with a stated value of €21,453,289. The Sale Agreement had no effect on ACM's balance sheet because the Argo Companies continued to be owned by ACM by virtue of ACM's ownership of Argo, which held the Argo Companies.

Later, in June 2008, ACM elected to distribute to its shareholders the Argo stock it had acquired as part of the earlier reorganization (the "ACM Distribution"). *See id.* at ¶62. In contrast to the Sale Agreement, the ACM Distribution did have an impact on ACM's balance sheet, as ACM no longer owned Argo and its assets (which consisted of the Argo Companies), as a result of ACM's decision to distribute the Argo shares to ACM's shareholders as part of a demerger transaction. Plaintiff employs numerous disparaging labels to describe ACM's demerger transaction, when in fact it was a normal course transaction undertaken by a public company.

The fatal flaw of Plaintiff's successor liability claim is that it is based on a transaction in which Argo was not involved, the ACM Distribution. Through creative drafting, however, Plaintiff has attempted to combine the ACM Distribution, which did not involve Argo and about which Plaintiff truly complains, with the Sale Agreement. Plaintiff refers to these two separate transactions as if they were one, the "Argo Spinoff," and alleges that "the intent behind, and consequences of, the Argo Spinoff was to shield ACM's largest asset from exposure ACM faced." *See id.* at ¶63. Plaintiff, however, cannot allege that the Sale Agreement shielded assets from ACM's creditors (which it had none) because as a result of the Sale Agreement, ACM held stock in Argo with a stated value of €21,453,289 and was in no better or worse financial position than it was before. It is ACM's distribution of the Argo stock to its shareholders about which Plaintiff truly complains. Plaintiff cites no law by which this Court can render the Sale Agreement fraudulent as a result of the subsequent ACM Distribution. Moreover, it would be unjust and illogical to hold Argo liable to persons subsequently claiming to be ACM's creditors as the result of a transaction that did not involve Argo in any way.

For all these reasons, which are discussed more fully below, the Amended Complaint must be dismissed because it fails to state a claim for successor liability against Argo and because Argo is not subject to this Court's jurisdiction.

## ARGUMENT

**I.     THE AMENDED COMPLAINT AGAINST ARGO SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(6) BECAUSE PLAINTIFF FAILS TO STATE A CLAIM OF SUCCESSOR LIABILITY.**

A corporation that acquires the assets of another corporation does not become liable for the debts of the selling corporation except under certain limited circumstances. *Baca v. Depot Sales, LLC*, No. 06-cv-00714, 2007 U.S. Dist. LEXIS 23705, at *7 (D.Colo. Mar. 30, 2007). "The rationale for this rule is a 'bona fide purchaser who gives adequate consideration and who lacks notice of prior claims against the property acquires no liability for those claims.'" *Eagle P. Ins. Co. v. Christensen Motor Yacht Corp.*, 959 P.2d 1052, 1055 (Wash. 1998) quoting *Hall v. Armstrong Cork, Inc.*, 692 P.2d 787 (Wash. 1984)).  The limited circumstances in which the buying corporation may be liable are when:  "(1) there is an express or implied assumption of liability; (2) the transaction results in a merger or consolidation of the two corporations; (3) the purchaser is a mere continuation of the seller; or (4) the transfer is for the fraudulent purposes of escaping liability." *Id.*  Plaintiff asserts, albeit incorrectly, that the "mere continuation" and "fraudulent transfer" exceptions apply here.

**A.     Plaintiff's Claim That ACM Transferred Assets To Argo For The Fraudulent Purposes Of Escaping Liability Is Subject To The Heightened Pleading Requirements of Rule 9(b).**

A corporation that acquires the assets of another may be liable for the debts of the seller when the transfer of assets is for the fraudulent purpose of escaping liability. *Baca*, 2007 U.S. Dist. LEXIS 23705, at *7.  In asserting a successor liability claim based on this exception to the general rule that a corporation acquiring the assets of another is not liable for seller's liabilities, a

4

plaintiff must plead "specific facts giving rise to the fraud theory with particularity, consistent with Fed. R. Civ. P. 9(b)" because this exception is based on fraud. *Infra-Metals, Co. v. Topper & Griggs Group, Inc.*, Civ. No. 3:05-CV-559, 2005 U.S. Dist. LEXIS 31385, at *8 n.4 (D. Conn. Nov. 30, 2005) (citing *Ricciardello v. J.W. Gant & Co.*, 717 F. Supp. 56, 59 (D. Conn. 1989)); *see also Apace Communications, Ltd. v. Burke*, 522 F. Supp. 2d 509, 522 (W.D.N.Y. 2007) (holding that successor liability claim based on an alleged fraudulent transfer of assets is "subject to dismissal under Rule 9(b)").

Plaintiff has cited several cases for the proposition that successor liability claims are not subject to Rule 9(b). In only one of the cases cited by Plaintiff does the court actually hold that Rule 9(b) is inapplicable to a successor liability claim *based on the fraudulent transfer exception*. *See Kruse v. Aamend, Inc.*, No. 96 C 5344, 1997 U.S. Dist. LEXIS 2530, at *12 (N.D.Ill. Mar. 4, 1997).[1] In *Kruse*, the court reasoned that Rule 9(b) is inapplicable because "if there is a finding of liability based on the 'fraudulent purpose of escaping liability of the seller's obligations,' this is not a claim for fraud." *Id.* This reasoning breaks down, however, when one considers the numerous claims, which are not claims for fraud, to which the heightened pleading requirements of Rule 9(b) apply. *See e.g.*, *U.S. v. ELA Med., Inc.*, No. 07-cv-01460, 2009 U.S. Dist. LEXIS 97074 (D.Colo. Oct. 7, 2009) (False Claims Act claims are subject to Rule 9(b)); *Cunningham v. Standard Fire Ins. Co.*, No. 07-cv-02538, 2008 U.S. Dist. LEXIS 82044 (D.Colo. Sep. 19, 2008) (negligent misrepresentation claims are subject to Rule 9(b)); *Creech v. Fed. Land Bank of*

---

[1] The remaining cases cited by Plaintiff do not specifically address the pleading standard for successor liability claims involving the fraudulent transfer exception. *See Chao v. Concrete Management Resources, L.L.C.*, No. 08-2501, 2009 U.S. Dist. LEXIS 18619 (D.Kan. Mar. 5, 2009) (addressing successor liability under the Fair Labor Standards Act); *Retirement Plan of the Unite Here Nat. Retirement Fund v. Kim*, No.08 C 2435, 2009 U.S. Dist. LEXIS 12190 (N.D.Ill. Feb. 17, 2009) (addressing pleading standards for an alter ego claim); *Kuhns Bros., Inc. v. Fushi Int'l, Inc.*, No. 3:06cv1917, 2007 U.S. Dist. LEXIS 51461, at *16-15 n.7 (D.Conn. July 16, 2007) (addressing pleading standards for successor liability based on exceptions other than the fraud exception).

*Wichita*, 647 F.Supp. 1097 (D.Colo 1986) (claims for violation of the Racketeer Influenced and Corrupt Organizations Act may be subject to Rule 9(b)).

The better reasoning is found in *Apace Communications*, to which Plaintiff offers no direct response. In *Apace Communications*, the court reasoned that because a successor liability claim based on the fraudulent transfer exception "is ultimately premised on fraud," it is subject to Rule 9(b). 522 F.Supp.2d at 522.

### B. Plaintiff Fails To Properly Allege ACM Transferred Assets To Argo For The Fraudulent Purposes Of Escaping Liability.

In the face of the heightened pleading requirements applicable to successor liability claims based on the fraudulent transfer exception, Plaintiff has failed to offer anything more than unsupported conclusory allegations that ACM's transfer of assets to Argo was done to shield ACM's largest asset from alleged liability to Plaintiff for securities fraud. *See* Amended Complaint, ¶¶ 63, 67-68, 102. Plaintiff has not alleged, and cannot allege, any specific facts indicating that the sale was designed to allow ACM to escape liability.

In determining whether a transaction was for the fraudulent purpose of escaping liability, courts consider factors such as the sufficiency of the consideration paid by the buying corporation, the ability of the selling company to satisfy its obligations after the sale, the intent and motivation for the sale, and the buying corporation's notice of claims against the selling corporation. *See Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995) (whether the alleged successor had notice of the claim before the acquisition); *DC Aviation, LLC v. Avbase Flight Services, LLC*, No. 06-cv-01960, 2008 U.S. Dist. LEXIS 12076, at *20-21 (D.Colo. Feb. 8, 2008) (whether the sale left the selling corporation with insufficient assets to satisfy its obligation); *Ferguson v. Arcata Redwood Co.*, No. C 03-05632, 2004 U.S. Dist. LEXIS 23613, at *15-16

(N.D.Cal. Nov. 12, 2004) (whether the consideration given for the sale was sufficient); *Schmoll v. ACandS, Inc.*, 703 F.Supp. 868, 873 (D.Or. 1988) (whether sale was designed to allow the seller to escape liability); *Eagle P. Ins. Co.*, 959 P.2d at 902-05 (whether the consideration was adequate and the transaction was done in good faith).  Plaintiff's successor liability claim against Argo should be dismissed because Plaintiff has not alleged, and cannot allege, these factors indicating that ACM transferred assets to Argo for the fraudulent purpose of escaping liability.

In *Eagle P. Ins. Co.*, the court held that the selling entity, a yacht builder, transferred its assets for the purpose of avoiding the reach of its creditors and that the buying entity was liable as a successor.  959 P.2d at 912.  In reaching this conclusion, the court relied on the selling entity's admission that the assets were transferred to allow the business to continue unhampered by the selling entity's creditors.  *Id.* at 906.  Plaintiff, in contrast, can point to no such admission by ACM or Argo.  Moreover, ACM *had no litigation, legal claims or liabilities outside of the normal course* at the time of the Sale Agreement and the ACM Distribution.  *See* Declaration of Kyriakos Rialas, attached hereto as Exhibit 4, at ¶¶3, 5.[2]  Plaintiff conveniently fails to state that its claim against ACM was filed weeks *after* the completion of the Sale Agreement and the ACM Distribution (*i.e.*, months after the Sale Agreement, and weeks after the ACM Distribution), and that ACM had *no* pending litigation, had not received any demands or notices of pending litigation from Plaintiff or anyone else and had no liabilities outside of the normal course at the time of the Sale Agreement and the ACM Distribution.  *See id.* at ¶¶3, 5.  Plaintiff's allegation that the Sale Agreement and ACM Distribution were fraudulent and made with the intent of defrauding ACM's creditors fails on this fact.  Accordingly, *Eagle P. Ins. Co., Schmoll, Chicago Truck Drivers, DC Aviation,* and the other cases cited by Plaintiff in support of their argument

---

[2] The Court can properly consider the Declaration of Kyriakos Rialas on this motion to dismiss for lack of personal jurisdiction.  *See Malea, LTD. v. Jawer S.A.*, 511 F.3d 1060, 1065 (10th Cir. 2007).

that the transfer was for the fraudulent purpose of avoiding creditors are inapplicable, as ACM had no creditors (or even persons claiming to be creditors).

The *Eagle P. Ins. Co.* court also held that "[a]dequate consideration for a transfer of assets between a buying and selling corporation is an important element when determining whether to impose successor liability." *Id.* at 902. This "important" factor leads to the conclusion that Argo cannot be held liable for ACM's debts. Plaintiff has not alleged, and cannot allege, that Argo provided inadequate consideration for the assets it acquired from ACM. As Plaintiff acknowledges in the Amended Complaint, in April 2008, ACM and Argo Group entered into an agreement under which ACM transferred its ownership of certain assets to Argo in exchanged for stock in Argo with a stated value of €21,453,289. *See* Amended Complaint at ¶61.

In *Schmoll*, upon which Plaintiff relies, the selling entity, faced with mounting asbestos-related claims and expenses, undertook a complicated corporate restructuring in which the selling entity's assets were transferred to the buying entity. 703 F.Supp. at 869-872. After analyzing "the context of the corporate restructuring and the participants' statements," the court concluded that the "transfer of assets was designed to escape liability." *Id.* at 873. At the time of the corporate restructuring, the selling entity had already exhausted approximately 71% of its $400 million in insurance coverage with many more claims pending. *Id.* In its public disclosures, the selling entity also disclosed that the long term goal of its corporate restructuring was "to limit exposure for asbestos claims only to businesses currently threatened." *Id.* at 873-74.

The context of the Sale Agreement, ACM's sale of assets to Agro, is much different. For example, Plaintiff has not alleged, and cannot allege, that there were claims pending against

ACM at the time of the sale.  *See* Declaration of Kyriakos Rialas (Exhibit 4), at ¶¶3, 5.  ACM's disclosure regarding the Proposed Distribution of the Argo Business, which Plaintiff attached to its Opposition Brief, clearly indicates that at the time of ACM's sale of assets to Argo, there were no claims pending against ACM relating to the alleged mismanagement at issue in this lawsuit.  *See* Proposed Distribution Disclosures, attached to Plaintiff's Opposition Brief as Exhibit 6, p.15.

In addition, in contrast to the stated purpose for the transaction in *Schmoll*, ACM disclosed its motivation for the sale saying that "the Board believes that its previous strategy of combining the two operations [of ACM and Argo] is no longer in Shareholders' interests" and that following the sale, "both businesses will be better able to execute their growth strategies by attracting and retaining funds under management and maintaining and augmenting their management teams as independent asset management firms." *See id.* at p.8.  Plaintiff can point to no statements or any other evidence indicating that the sale was designed to allow ACM to escape liability.

Finally, in an attempt to argue that ACM was left with insufficient assets to satisfy its obligations after what Plaintiff has defined as the "Argo Spinoff," Plaintiff includes in the "Argo Spinoff" two separate transactions, the Sale Agreement and the ACM Distribution.  Argo, however, was only involved in the Sale Agreement.  *See* Amended Complaint, ¶ 61.  In the Sale Agreement, which had no impact on the assets available to ACM to satisfy its obligations, ACM agreed to transfer its ownership of the Argo Business to Argo in exchange for stock in Argo with a stated value of €21,453,289.  *See* Amended Complaint, ¶ 61.  In contrast, Argo had no involvement in the ACM Distribution, in which ACM elected to distribute the Argo stock it had acquired to its shareholders.  *See id.* at ¶62.  Unlike the Sale Agreement, the ACM Distribution

had a negative impact on ACM's balance sheet, as it no longer owned Argo and its assets, the

Argo Business, as a result of ACM's decision to distribute the Argo shares to ACM's

shareholders.  Because Plaintiff's successor liability claim against Argo rests on the allegation

that ACM was left with insufficient assets to satisfy its obligations (of which it had none at the

time of the ACM Distribution), Plaintiff is really complaining about the ACM Distribution, the

only transaction that impacted ACM's assets.  Knowing that Argo had no involvement in this

transaction, Plaintiff has attempted to combine it with ACM's earlier internal reorganization of

its holding of the Argo Business (*i.e.*, the transactions effected pursuant to the Sale Agreement)

in a desperate attempt to hold Argo liable for ACM's actions.  ACM's distribution of the Argo

stock acquired from Argo months before does not render the sale between Argo and ACM

fraudulent.  Moreover, it would be unjust and illogical to hold Argo liable to persons

subsequently claiming to be ACM's creditors as the result of a transaction that did not involve

Argo in any way.

Accordingly, Plaintiff's successor liability claim against Argo, to the extent it is based on

the fraudulent transfer exception, should be dismissed because Plaintiff fails to allege facts

indicating ACM transferred assets to Argo for the fraudulent purpose of escaping liability.

Rather, Plaintiff makes only unsupported, conclusory allegations.  Such allegations are

insufficient.

### C.    Plaintiff Fails To Properly Allege Argo Is The Mere Continuation of ACM.

A corporation that acquires the assets of another may be liable for the debts of the seller

when the purchaser is a mere continuation of the seller.  *Baca*, 2007 U.S. Dist. LEXIS 23705, at

*7.  The test for the application of this exception to the general rule that a corporation acquiring

the assets of another is not liable for seller's liabilities is "whether the purchasing corporation is,

in effect, a continuation of the seller's business operations," *id.* at *8-9, or "the same corporate

entity . . . simply wearing a 'new hat,'" *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 654 (5th Cir. 2002).

In determining whether the purchaser is the mere continuation of the seller, courts consider factors such as the adequacy of the consideration, the continuation of the seller's business operations, management, and shareholders, the dissolution of the seller, and the extent of the assets transferred. *See, e.g.*, *Patin*, 294 F.3d at 654 (continuation of seller's business operations); *Minn. Mining & Manuf. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1262 (same); *Duris v. Eranto Shipping, Inc.*, 684 F.2d 352, 353 (6th Cir. 1982) (dissolution of the predecessor entity); *Knapp v. N.A. Rockwell Corp.*, 506 F.2d 361, 367 (3d Cir. 1974) (same); *Baca*, 2007 U.S. Dist. LEXIS 23705, at *8-9 (adequacy of the consideration); *Huth v. Hillsboro Ins. Mgmt., Inc.*, 72 F.Supp.2d 506 (E.D. Pa. 1999) (continuation of seller's business operations); *CMCB Ent., Inc. v. Ferguson*, 114 P.3d 90, 93 (Colo.App. 2005) (continuation of management and shareholders); *Simmers v. Am. Cyanamid Corp.*, 576 A.2d 376, 386  (Pa. Sup. Ct. 1990) (transfer of all of the assets of the predecessor entity).  Consideration of these factors leads to the conclusion that Argo is not the mere continuation of ACM.

In *Patin*, the court found the successor corporation to be the same corporate entity as the predecessor corporation based on the fact that the predecessor ceased building the boat at issue and its two owners simply began building the same boats through a new entity, the defendant, which shared the same address, telephone number, officers, owners, employees, and assets.  294 F.3d at 645 and 650.  Plaintiff has not alleged, and cannot allege, similar facts.  ACM and Argo are separate businesses that continue to co-exist today.  *See generally* Amended Complaint.  In January 2007, ACM acquired the Argo Business by purchasing shares of three Argo Capital Management operating companies, the Argo Companies, which had been in business since 2000.

*See* Amended Complaint, ¶ 59.  In February 2008, ACM created Argo and in April 2008 Argo acquired the shares of the Argo Companies from ACM, for which Argo provided consideration. *See id.* at ¶ 61.  Argo does not own or manage, and has never owned or managed the Absolute Funds at issue in this lawsuit; it is simply a holding company for four operating subsidiary investment management companies operating under the *Argo* brand, which manage the Argo Funds.  *See* Declaration of Argo Group Limited, attached to Argo's Motion to Dismiss as Exhibit 1, ¶¶ 4, 9.  ACM, on the other hand, was the investment manager for various funds, including two Absolute funds identified in the Amended Complaint.  *See* Declaration of Absolute Capital Management Holdings Limited, attached to ACM Defendants' Motion to Dismiss the Amended Complaint as Exhibit 3, ¶ 4.  Finally, as Plaintiff acknowledges, ACM transferred only a portion of its assets to Argo, which consisted exclusively of the Argo Funds and for which ACM received full and valuable consideration.  *See id.* at ¶¶ 61, 63.  To be clear, ACM transferred no cash or financial assets, no fixed assets, no intellectual property, no customers or goodwill, and no part of the *Absolute* branded hedge fund business to Argo; the only assets it transferred were the shares of the Argo Companies which it itself had acquired in 2007.

The *Minn. Mining & Manuf.* court also found successor liability, but did so based upon facts much different than the facts at issue here.  In *Minn. Mining & Manuf.*, the defendant entity was established after a lawsuit was initiated against the alleged predecessor, all of the assets were then transferred to the defendant, and customers were informed that the defendant succeeded the predecessor.  In this case, however, Plaintiff has not alleged, and cannot allege, that Argo was created after the initiation of this suit, that all of ACM's assets were transferred to Argo, that ACM was dissolved, or that ACM represented that Argo was its successor.  *See generally*

Amended Complaint.  Plaintiff, therefore, cannot argue that Argo is, in effect, a continuation of ACM's business operations or the same corporate entity simply wearing a new hat.

In contrast to the facts of this case, in *Duris*, which Plaintiff also relies upon, the alleged predecessor entity was merged into the defendant and ceased to exist.  684 F.2d at 353.  Plaintiff has not alleged, and cannot allege, that ACM merged into Argo.  As Plaintiff acknowledged in the Amended Complaint, both entities continue to exist today.  *See generally*, Amended Complaint.  In addition, in *Duris*, the forum state had a statute providing that when a merger of consolidation becomes effective, the surviving corporation is liable for all obligations of each constituent corporation.  *Id.* at 356.  Plaintiff cannot claim any such statute applies here, let alone that there was a merger of consolidation.  *See* Amended Complaint, ¶ 64.

Similarly, in *Knapp*, also relied upon by Plaintiff, the court recognized the importance of the selling corporation ceasing to conduct business in establishing successor liability under the mere continuation exception.  506 F.2d at 367.  In holding that the defendant was the successor of the selling corporation, the court relied upon the fact that, although the selling corporation did not dissolve, its continued existence was insubstantial.  *Id.*  "[A] number of considerations indicate the insubstantiality of the continued existence of [the selling corporation]" the court reasoned, including "the brevity of the corporation's continued life, the contractual requirement that [the selling corporation] be dissolved as soon as possible, [and] the prohibition on engaging in normal business transactions."  Plaintiff has not alleged, and cannot allege, that ACM dissolved following the sale of assets to Argo, let alone that ACM's continued corporate existence was insubstantial in any way.  ACM continues to manage the Absolute funds to this day.

In *Baca*, which is cited by Plaintiff, the United States District Court for the District of Colorado emphasized that in determining whether the mere continuation exception applies, "the emphasis should be on whether the sale or transfer was a bona fide one involving consideration to the seller." 2007 U.S. Dist. LEXIS 23705, at * 8-9.  In finding that the defendant was the mere continuation of the selling corporation, the *Baca* court relied upon the fact that no consideration was paid for the transfer at issue. *Id.* at *9.  As explain in Part I.C. above, Plaintiff has not alleged, and cannot allege, that Argo provided inadequate consideration for the assets it acquired from ACM.  Pursuant to the Sale Agreement between ACM and Argo, ACM transferred its ownership of the Argo Companies to Argo in exchange for stock in Argo with a stated value of €21,453,289.  *See* Amended Complaint at ¶ 61.  As stated above, this transfer had no effect on ACM's balance sheet.  Where prior to the transfer ACM owned the shares of the Argo Companies directly, after the transfer it owned the Argo Companies indirectly by virtue of its ownership of Argo, which owned the Argo Companies.  ACM's financial position was no different before or after the Sale Agreement.  It must follow, therefore, that the shares ACM received from Argo in exchange for the transfer of the Argo Companies had precisely the same value as the Argo Companies.  Pursuant to the transfer documents, ACM and Argo agreed that this value was €21,453,289 for their respective accounting purposes.  *See* Declaration of Kyriakos Rialas (Exhibit 4), at ¶4.

In the *Huth* also case cited by Plaintiff, the defendant was alleged to have continued the same line of business as the predecessor, taken over the predecessor's accounts, employees, and clients, operated under the predecessor's name, and assumed the predecessor's telephone number and mailing address. 72 F.Supp.2d at 511.  Based on these allegations, the court refused to grant the defendant's motion to dismiss.  *Id.*  Plaintiff has not, and cannot, make these same allegations

with respect to Argo.  Argo has not simply continued ACM's business.  Argo and ACM have both continued the same business they undertook when they were part of the same corporate group, and those respective businesses operated independently with substantially no overlap or interrelation while under ACM's ownership.  *See* Amended Complaint, ¶¶ 59, 61.  Plaintiff has not alleged, nor can it allege, that Argo and ACM have the same address, phone number, accounts, employees, and clients, or that Argo and ACM operate under the same names.  *See* generally Amended Complaint.

Finally, in *Simmers*, the court held that the defendant had become the "corporate embodiment" of the predecessor entity.  576 A.2d at 482.  The defendant did so by acquiring all of the assets of the predecessor entity, which was then dissolved, and continuing to do business with all of the predecessor's corporate officers in place.  *Id.* at 482-83.  In contrast, Argo is not the corporate embodiment of ACM.  Argo did not acquire all of ACM's assets; it acquired only the Argo Companies and no other assets.  *See* Amended Complaint, ¶ 63.  Moreover, ACM was not dissolved; it continues to exist today and continues to manage the Absolute Funds to this day.  *See generally* Declaration of Absolute Capital Management Holdings Limited, attached as Exhibit 3 to AMC Defendants' Motion to Dismiss Amended Complaint.  Therefore, because Argo is not the corporate embodiment of ACM, Argo cannot be held liable under the mere continuation exception Plaintiff purports to assert.

In its attempt to assert successor liability based on the mere continuation exception, Plaintiff alleges only that Argo is "merely a continuation of the debt and real estate fund business of ACM" and that "the same persons responsible for ACM's debt and real estate fund management before the Argo Spinoff continue to manage the debt and real estate funds after the Spinoff, for the benefits of the exact same shareholders of ACM who had become shareholders

of Argo . . . ."  Amended Complaint at ¶ 101.  Plaintiff's allegations are insufficient to allege mere continuation.  Plaintiff fails to allege that the consideration paid by Argo was inadequate, that ACM ceased to exist following the sale, that Argo simply continued ACM's business operations, or that ACM transferred all of its assets to Argo.  Both ACM and Argo exist today as separate entities, with separate operating and business objectives, and distinct shareholder bases. In claiming support of its unfounded allegation that ACM transferred all of its assets to Argo, Plaintiff cites that ACM's stock price dropped by 60% immediately following the Argo distribution.  Argo rejects Plaintiff's assertion that stock market price of ACM shares should be determinative of what assets or value it did and did not transfer to Argo, but points out that ten months after the Argo demerger, after Argo's shares were listed on the London Stock Exchange's AIM market, Argo and ACM shares traded at similar price levels, and in fact the closing price of ACM's stock price was above that of Argo's on April 20, 2009.  Plaintiff, therefore, has not alleged and cannot establish facts sufficient to demonstrate that Argo is a mere continuation of ACM and has failed to state a claim of successor liability based on the mere continuation exception.

### D.    Plaintiff Has Failed To State A Claim Under The Securities And Exchange Act And Has Thus Failed To State A Claim Of Successor Liability.

Argo once again incorporates the argument set forth in Section III of ACM Defendants' Motion to Dismiss the Amended Complaint (Dkt. No. 46) that Plaintiff has failed to state a claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5.  Because Plaintiff has failed to state a claim under Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 against ACM, Plaintiff has also failed to state a claim against Argo for successor liability.

II.     **THE AMENDED COMPLAINT AGAINST ARGO SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(b)(2) BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER ARGO**

     A.     **Argo Is Not Subject to Personal Jurisdiction Under The Nationwide Service Of Process Provision Of The Securities Exchange Act Or Colorado's Long-Arm Statute.**

In the Amended Complaint, Plaintiff alleges, without any specific factual support, that Argo and the other defendants are subject to the jurisdiction of this Court based on the nationwide service of process provision of the Securities Exchange Act of 1934. *See* Amended Complaint, ¶¶12-13. In response to this allegation, Argo demonstrated in its Motion to Dismiss that Plaintiff could not establish personal jurisdiction over Argo based upon this nationwide service of process provision because Plaintiff has not alleged, and cannot allege, that Argo had any contacts with the United States. Recognizing this failure, Plaintiff changed its theory of personal jurisdiction over Argo. Plaintiff now claims that Argo is subject to the personal jurisdiction of this Court based on the imputed contacts of its alleged predecessor entity, ACM. Despite not alleging this theory of personal jurisdiction in the Amended Complaint, Plaintiff argues that Argo's discussion of its absence of contacts with Colorado and the United States it its Motion to Dismiss misses the point. In abandoning its previous theories of personal jurisdiction, Plaintiff concedes that Argo is not subject to personal jurisdiction under the nationwide service of process provision of the Securities Exchange Act of 1934 or Colorado's long-arm statute. As demonstrated in Argo's Motion to Dismiss, Argo lacks sufficient contacts with Colorado and the United State to subject it to jurisdiction pursuant to these statutes.

     B.     **Plaintiff May Not Rely On ACM's Contacts With The United States For The Purpose Of Establishing Personal Jurisdiction Over Argo.**

The parties do not dispute that the jurisdictional contacts of one entity may be imputed to the defendant entity where the plaintiff has established that the defendant is a successor entity

and liable for the debts of the predecessor entity.  *See Patin*, 294 F.3d 640.  "The rationale for

this rule is that, because the two corporations 'are the *same entity*, the jurisdictional contacts of

one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due

process analysis."  *Global Polymer Indus., Inc. v. C&A Plus, Inc.*, 2006 U.S. Dist. LEXIS, Case

No. 05-4081, at *6-7 (D.S.D. Jan. 13, 2006) (emphasis in original).  Plaintiff argues that Argo is

liable for the debts of ACM as ACM's successor because (1) ACM transferred assets to Argo for

the fraudulent purpose of escaping liability and (2) Argo is a mere continuation of ACM.  As

discussed in Part I. above, Plaintiff has failed to properly allege facts establishing either of these

two exceptions to the general rule that a corporation acquiring the assets of another is not liable

for seller's liabilities.  Accordingly, having failed to establish that Argo is ACM's successor and

liable for ACM's debts, Plaintiff is not entitled to impute ACM's jurisdictional contacts, if any,

to Argo in order to establish that Argo is subject to the personal jurisdiction of this Court.

     **C.**     **Plaintiff Has Failed To Establish That ACM Is Subject To This Court's Jurisdiction, And Has Thus Failed Establish That Argo Is Subject To This Court's Jurisdiction As ACM's Alleged Successor.**

Having abandoned its earlier theory of personal jurisdiction over Argo – that Argo is

subject to personal jurisdiction under the nationwide service of process provision of the

Securities Act of 1934 or under Colorado's long-arm statute – Plaintiff's case for this Court's

personal jurisdiction over Argo is now entirely dependent upon a finding that ACM is subject to

this Court's jurisdiction.  As Plaintiff has acknowledged, Argo is not subject to this Court's

jurisdiction under Plaintiff's successor liability theory unless Argo's alleged predecessor, ACM,

is subject to personal jurisdiction in Colorado.  *See* Opposition to Motion to Dismiss, p.11 n.6.

ACM has filed a motion to dismiss, which is currently before this Court, claiming that it is not

subject to personal jurisdiction in Colorado.  (Dkt. No. 46).  Argo hereby incorporates

ACM's argument that it is not subject to personal jurisdiction in Colorado. Accordingly, the Court should grant Argo's motion to dismiss for lack of personal jurisdiction because Argo's alleged successor, ACM, is not subject o the personal jurisdiction of this Court.

**D.      A Judgment Based On This Court's Exercise Of Personal Jurisdiction In Colorado Cannot Be Enforced Against Argo In The Isle Of Man.**

In response to Argo's argument that a judgment obtained by Plaintiff in this Court is not enforceable against Argo in the Isle of Man, Plaintiff attaches an expert report attacking the basis for Argo's argument. Plaintiff's expert, however, does not disagree with Argo's conclusion that a judgment obtained by Plaintiff in this Court is not enforceable against Argo in the Isle of Man.

In any event, Argo has commissioned its own opinion of an English barrister, Jonathan Nash Q.C. (Queen's Counsel), which is attached hereto as Exhibit 5. In his opinion, Mr. Nash Q.C. concludes, as does Plaintiff's expert, that English common law will govern whether a judgment obtained by Plaintiff in this Court is enforceable in Isle of Man courts. Furthermore, while Plaintiff's expert stopped short of offering an opinion on whether a judgment obtained by Plaintiff in this Court is enforceable in the Isle of Man, Mr. Nash Q.C. concludes such a judgment is not enforceable. Specifically, Mr. Nash Q.C. concludes that "[i]f the facts as to Argo's connection with the jurisdiction of the Colorado Court are as they are stated to be at page 19 of the Motion to Dismiss, then in my opinion the English Court and the Isle of Man Court would not recognise any judgment obtained in this action against Argo in Colorado." Moreover, the fact the parties have each retained foreign attorneys to act as expert witnesses in interpreting foreign law highlights the fact that this Court is not the proper forum for this dispute.

## <u>CONCLUSION</u>

For the reasons set forth herein, this Court should dismiss Argo from this lawsuit

pursuant to F.R.C.P. 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a

claim, respectively.

Dated this 12th day of March, 2010.

HUSCH BLACKWELL SANDERS LLP

By:     /s/ Matthew J. Smith
        Matthew J. Smith
        Jeffrey D. Whitney
        1700 Lincoln, Suite 4700
        Denver, Colorado 80203
        Telephone:  (303) 749-7200
        Facsimile:  (303) 749-7272
        Matt.Smith@huschblackwell.com
        Jeff.Whitney@huschblackwell.com
        *Attorneys for Defendant Argo Group Limited*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 12th day of March, 2010, a true and correct copy of the foregoing **DEFENDANT ARGO GROUP LIMITED'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND JURY DEMAND** was served electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Daniel F. Wake
SANDER INGEBRETSEN & WAKE, P.C.
1660 17th Street, Suite 450
Denver, Colorado 80202
Telephone: 303-285-5544
Facsimile: 303-285-5301
dwake@siwlegal.com

George W. Croner
KOHN, SWIFT & GRAF, P.C.
One south Broad Street, Suite 2100
Philadelphia, Pennsylvania 19107
Telephone: 215-238-1700
Facsimile: 215-238-1968
gcroner@kohnswift.com

John V. McDermott
Amy L. Benson
Meghan Frei Berglind
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, suite 2200
Denver, Colorado 80202
Telephone:  303-223-1100
Facsimile:  303-223-1111
abenson@bhfs.com
jmcdermott@bhfs.com
mberglind@bhfs.com

*/s/ Carla Kirkpatrick*
Carla Kirkpatrick