IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01381-MSK-CBS

THE CASCADE FUND, LLLP, on behalf of itself and a class of similarly situated persons,

       Plaintiff,

v.

ABSOLUTE CAPITAL MANAGEMENT HOLDINGS LIMITED,
ABSOLUTE GENERAL PARTNER LIMITED,
FLORIAN HOMM,
SEAN EWING,
JOHN A. FLEMING,
RONALD E. TOMPKINS, and
ULLRICH ANGERSBACH,

       Defendants.

---

## OPINION AND ORDER GRANTING MOTION TO DISMISS

---

**THIS MATTER** comes before the Court on Defendants Absolute Capital Management Holdings Limited ("ACM"), Absolute General Partner Limited ("AGP"), John A. Fleming ("Mr. Fleming"), and Ronald E. Tompkins's ("Mr. Tompkins") (collectively, the "ACM Defendants") Motion to Dismiss (**#46**), to which Plaintiff The Cascade Fund, LLLP ("Cascade") responded (**#51**), and the ACM Defendants replied (**#58**). Having considered the briefs, the First Amended Complaint, and the relevant law, the Court **FINDS** and **CONCLUDES** as follows.

### I.   Jurisdiction

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.

### II.   Issues Presented

In this case, Cascade alleges that the ACM Defendants made misstatements and omissions of material facts in offering memoranda for mutual funds and hedge funds that lost a significant portion of their value when it was revealed that the value of the funds was based on inflated stock prices.  The ACM Defendants have moved to dismiss some of Cascade's claims for lack of standing and to dismiss all of the claims for lack of personal jurisdiction and failure to state a claim.

### III.   Material Facts

Construing the allegations most favorably to Cascade, the Court finds that the following facts are set forth in the First Amended Complaint **(#41)**.

Cascade comes before the Court as a representative of an as-yet uncertified class of individuals and entities that purchased mutual funds and hedge funds managed by ACM and partnered with AGP.  The funds are the Absolute East West Fund Limited ("East West Fund Limited")  the Absolute East West Fund L.P. ("East West Fund L.P."), the Absolute Return Europe Fund ("Return Europe Fund"), the Absolute Octane Fund Limited ("Octane Fund Limited"), the Absolute Octane Fund L.P. ("Octane Fund L.P."), the European Catalyst Fund Limited ("Catalyst Fund"), and the Absolute Activist Value Fund ("Activist Fund").[1]  All of the funds were organized under the law of the Cayman Islands.  Only some of the funds were and are available for purchase in the United States.

Cascade purchased shares of two of the funds on three occasions: (1) 107.1 shares of the

---

[1]Throughout the First Amended Complaint, Cascade refers to East West Fund L.P. and East West Fund Limited and Octane Fund L.P. and Octane Fund Limited collectively, as "East West Fund" and "Octane Fund," respectively, despite the fact that the entities are separate. Where necessary, the Court distinguishes between the entities.

Return Europe Fund on July 1, 2005; (2) 76.576 shares of the East West Fund Limited on October 1, 2005;[2] and (3) 68.463 shares of an East West fund on February 1, 2006.[3]

At all relevant times in this case, AGP, an entity organized under Grand Cayman Island law, was the general partner in East West Fund L.P. and Octane Fund L.P. ACM, also an entity organized under Grand Cayman Island law, served as an investment advisor and investment manager and managed the fund assets for all of the aforementioned funds except for East West Fund L.P. and Octane Fund L.P.

Messrs. Tompkins and Fleming were the members of the board of directors for ACM. Both are British citizens who reside in the Cayman Islands. Mr. Homm, a German citizen, was the chief investment officer ("CIO") for ACM. As CIO, Mr. Homm was actively involved in fund asset allocation and made investments, including stock trades, on the funds' behalf. Mr. Homm's asset management and the offering memoranda for the implicated funds stand at the crux of this case.

Unbeknownst to Cascade at the time it purchased its fund shares, Mr. Homm owned fifty percent of a stock brokerage firm in California that brokered penny stocks.[4] Mr. Homm used this

---

[2]The ACM Defendants contend that the East West Fund Limited was not available for purchase to United States citizens and entities. Independent of this assertion, it is undisputed that Cascade obtained shares of the fund. Accordingly, the Court does not entertain the ACM Defendants' arguments on this point.

[3]Cascade does not specify whether it purchased shares of the East West Limited Fund or the East West L.P. Fund. However, based on Cascade's statement that East West L.P. Fund was created sometime in 2006, the Court presumes that Cascade's purchase in 2005 was of East West Limited. Construing the facts in the light most favorable to Cascade, the Court assumes without deciding that Cascade purchased shares of the East West Fund L.P., giving it interest in both.

[4]Penny stocks are stocks that are traded on the over-the-counter market, but do not meet the requirements to be listed on any national stock exchange. They are listed on the so-called "pink sheets" and the "bulletin board," but are generally known as "unlisted" stocks.

brokerage firm to purchase penny stocks on behalf of the funds.  The brokerage collected

commissions on the trades that corresponded to the price of the stocks.  Accordingly, it would be

in Mr. Homm's personal interest to sell the stocks at as high a price as possible, even though

such high pricing would be against the interests of the funds.  Also, Mr. Homm purchased stocks

in companies in which the brokerage held interests, thereby benefitting the brokerage and, by

extension, himself.

In support of these contentions, Cascade cites eight transactions taking place between

May 2004 and June 2007 in which: (1) Mr. Homm purchased stocks that the brokerage firm

owned and later sold after Mr. Homm's purchases raised the stock prices and (2) Mr. Homm

made large stock purchases through the brokerage.  These transactions resulted in the brokerage

firm's receipt of several million dollars in cash, several million shares of stock, and several

million stock options in commissions.

In September 2007, it was revealed that ACM had been calculating the net asset values of

the funds it managed and advised using inflated prices for the penny stocks.  Some of the funds

were heavily invested in penny stocks.  When the net asset values of the funds were re-calculated

using the market of the penny stocks, some funds lost approximately thirty percent of their value.

Around the time of this disclosure, Mr. Homm resigned from his position at ACM.

The offering memoranda for the funds in question set certain parameters for the funds'

operation.  The offering memoranda for the Return Europe Fund, the East West L.P. and Limited

Funds, the Catalyst Fund, and the Octane L.P. and Limited Funds represented that the funds were

subject to certain investment restrictions, including limiting unlisted securities to ten percent of

the net asset value of each fund at the time the securities were purchased.  The offering

memoranda for the East West L.P. and Limited Funds, the Return Europe Fund, and the Catalyst

Fund all contained statements evincing an intent for the funds to invest principally in European

equities and securities.  Additionally, according to Cascade, the offering memoranda stated that

ACM was responsible for calculating net asset values for the Return Europe Fund, the East West

L.P. and Limited Funds, the Catalyst Fund, the Octane Limited and L.P. Funds, and the Activist

Fund.

Based on these alleged facts, Cascade asserts a claim for securities fraud arising under

Rule 10b-5 of the Securities Exchange Act ("Rule 10b-5"),[5] alleging that the ACM Defendants

knowingly made misleading statements and omissions of material facts in the offering

memoranda for the funds in question.  Specifically, Cascade alleges that in the offering

memoranda, the ACM Defendants wrongfully: (1) failed to disclose Mr. Homm's relationship

with the penny stock brokerage and self-dealing therewith; (2) misrepresented that every fund's

holdings of unlisted securities would not exceed ten percent of the fund's net asset value at the

time of purchase of the unlisted securities; (3) misrepresented that net asset values would be

based on stock valuations at a fair price reflecting the stocks' fair value; and (4) misrepresented

---

[5]Rule 10b-5 is codified at 17 C.F.R. § 240.10b-5, and provides:
It shall be unlawful for any person, directly or indirectly, by the use of any means
or instrumentality of interstate commerce, or of the mails, or of any facility of any
national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material
fact necessary in order to make the statements made, in the light of the
circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would
operate as a fraud or deceit upon any person, in connection with the purchase or
sale of any security.

the investment objectives for the Return Europe Fund, the East West Limited and L.P. Funds, and the Catalyst Fund.  Additionally, Cascade asserts that the ACM Defendants wrongfully misstated the net asset values of the funds.

## IV.   Analysis

In the motion now before the Court, the ACM Defendants move for dismissal of certain claims for lack of standing pursuant to Fed.R.Civ.P. 12(b)(1) and for dismissal of all claims pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction or, alternatively, under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.  The Court addresses the arguments of ACM Defendants' three-part motion separately and in turn.

### A.     Federal Rule of Civil Procedure 12(b)(1)

First, the ACM Defendants move to dismiss all of Cascade's claims with regard to funds in which it has no investment.  The ACM Defendants direct the Court to Cascade's sworn certification attached to its First Amended Complaint, which reflects that Cascade purchased shares of only the Return Europe Fund, the East West Fund Limited, and possibly the East West Fund L.P.[6]  Cascade responds that it is asserting claims on behalf of other United States-based investors in other ACM-managed funds and in the funds that were partnered with AGP.

The issue of standing to bring a claim is considered a component of subject-matter jurisdiction and analyzed under Fed.R.Civ.P. 12(b)(1).  The party asserting the existence of subject matter jurisdiction bears the burden of proving such jurisdiction exists, including the

---

[6]When a party challenges the allegations supporting subject-matter jurisdiction, the court has wide discretion to review affidavits and other documents to resolve disputed jurisdictional facts.  *See Davis v. United States*, 343 F.3d 1282, 1296 (10th 2003).  Accordingly, the Court's reference to evidence outside the pleadings does not convert Cascade's motion to dismiss into a motion for summary judgment.

burden of demonstrating adequate standing. *Hydro Resources, Inc. v. E.P.A.*, 562 F.3d 1249, 1258 (10th Cir. 2009); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the allegations in the complaint as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002), *citing Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Here, the ACM Defendants' challenge is of the sort of the former, questioning the facial sufficiency of Cascade's assertion of its standing.

In its First Amended Complaint, Cascade states that other United States citizens and entities purchased shares of some or all of the relevant funds in this case and refers to itself as representing "a class of similarly situated persons." Generally, a party to a lawsuit can assert his own legal rights, and may not rest his claims on the legal rights and interests of others. *See Wilderness Soc'y v. Kane County*, 581 F.3d 1198, 1232 (10th Cir. 2009). At this juncture, Cascade's assertion is premature. Cascade may intend to seek to have class of plaintiffs designated under Fed.R.Civ.P. 23, but it has not yet made such a request. At such time, Cascade may seek to Amend its Complaint, if the time for amendment has not passed.

The ACM Defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(1) is therefore granted. This Court limits its analysis to the funds that Cascade itself purchased, leading to its alleged injury in fact – the Return Europe Fund, the East West Fund L.P., and East West Fund Limited.

## B.    Federal Rule of Civil Procedure 12(b)(2)

The ACM Defendants also move to dismiss Cascade's First Amended Complaint for lack

of personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2).  The ACM Defendants emphasize that they are all foreign persons or entities and submit that they have not had sufficient minimum contacts with the United States to warrant exercise of personal jurisdiction over them.  Cascade argues to the contrary.

Rule 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person."  The plaintiff bears the burden of establishing personal jurisdiction over the defendant or defendants.  *OMI Holdings v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  This burden is light in the preliminary stages of litigation.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  When there has been no evidentiary hearing, a plaintiff must only present competent proof in the form of affidavits and other written materials that, if true, would establish a *prima facie* case that jurisdiction is proper.  *Id.*  To defeat such a showing by the plaintiff, a defendant must come forward with a "compelling case" that other considerations render jurisdiction unreasonable.  *See OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In the absence of a hearing, the Court accepts a plaintiff's well-pled allegations in a complaint as true to the extent that they are not controverted by a defendant's affidavits.  *Wenz*, 55 F.3d at 1505.  If there is a factual dispute, it is preliminarily resolved in the plaintiff's favor, to be ultimately determined at trial.  *Id.*

The Tenth Circuit Court of Appeals has enumerated the proper process to determine whether a court has personal jurisdiction in a federal question case:

> Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.

*Peay v. Bellsouth Medical Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (citations and

internal quotation marks omitted).  This case arises under section 27 of the Securities Exchange

Act, which provides in pertinent part as follows:

> The district courts of the United States . . . shall have exclusive jurisdiction of
> violations of this title or the rules and regulations thereunder, and of all suits in
> equity and actions at law brought to enforce any liability or duty created by this
> title or the rules and regulations thereunder. . . .  Any suit or action to enforce any
> liability or duty created by this title or rules and regulations thereunder, or to
> enjoin any violation of such title or rules and regulations, may be brought in any
> such district or in the district wherein the defendant is found or is an inhabitant or
> transacts business, and process in such cases may be served in any other district
> of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa.  Courts have construed this language as evidencing a Congressional intent to

extend personal jurisdiction to the full reach permitted under the Due Process Clause of the

Constitution of the United States and authorizing service on defendants who only may be found

in foreign countries.  *See*, *e.g., Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309,

1316 (9th Cir. 1985) (overturned on other grounds); *Travis v. Anthes Imperial, Ltd.*, 473 F.2d

515, 529 (8th Cir. 1973); *Leasco Data Processing Equipment Corporation v. Isidore Kerman*,

468 F.2d 1326, 1340 (2d Cir. 1972).  Accordingly, personal jurisdiction may be asserted over the

ACM Defendants in this case, so long as due process is satisfied.

To comport with due process, a defendant must have minimum contacts with the forum

state such that maintenance of the lawsuit would not offend "traditional notions of fair play and

substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The focus is on

protecting the liberty interest in not being subject to "the binding judgments of a forum with

which he has established no meaningful contacts, ties, or relations."  *Burger King*, 471 U.S. at

472 (quotations and citation omitted).  The minimum contacts requirement differs slightly

depending on whether it arises in the context of general or specific jurisdiction.  *See Trierweiler*

*v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).  For a court to exercise general jurisdiction over a non-resident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates a foreign defendant's "continuous and systematic general business contacts" in the forum.  *See OMI Holdings*, 149 F.3d at 1091.  In contrast, for a court to exercise specific jurisdiction, the minimum contacts requirement is less strict, but requires a two-prong analysis.  First, courts must determine if minimum contacts exist.  They do if the defendant has purposefully directed activities at the residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.  *See Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999).  Second, if a court finds that minimum contacts exist to support specific jurisdiction, it must then examine whether exercise of personal jurisdiction would be reasonable, which entails undertaking a five-factor analysis.  *See Int'l Shoe*, 326 U.S. at 316. In this case, because all of the ACM Defendants are foreign nationals, in analyzing minimum contacts, the "forum" to be considered is the United States as a whole, not Colorado.  *See Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946 n.21 (11th Cir. 1997).

Cascade argues that this Court may exercise specific jurisdiction over all of the ACM Defendants either general or specific jurisdiction over ACM and AGP.  However, Cascade's only argument for general jurisdiction is a one-paragraph presentation with reference only to ACM, comprised of conclusory allegations and lacking reference to the Complaint or evidence.  This does not satisfy Cascade's burden to make a *prima facie* showing that ACM and AGP engaged in continuous and systematic business contacts with the United States.  The Court next turns to whether Cascade has met its burden to establish specific jurisdiction.

### 1.   ACM

The ACM Defendants argue that this Court does not have specific personal jurisdiction over ACM because Cascade cannot establish that ACM purposefully availed itself of the privilege of conducting business within the United States.  Cascade counters that: (1) Cascade has received reports from, exchanged e-mails with, and conducted telephone calls with ACM concerning business matters while in the United States, (2) ACM employed agents in the United States to solicit investors; (3) ACM conspired with a United States-based company to commit fraud and cause harm in the United States by purchasing United States-based stocks; and (4) ACM marketed its funds and solicited several other investors in the United States, communicated with them, and met with them in the United States.

In support of its first argument, Cascade points the Court to an email exchange between itself and ACM's predecessor company and some 64 pages of email correspondence between itself and ACM.  The ACM Defendants concede that ACM conducted telephone calls and exchanged emails with Cascade, but argue that emails and telephone calls cannot serve to establish minimum contacts.

The ACM Defendants oversimplify the law.  It is well settled that telephone calls and letters may constitute sufficient contacts to allow the exercise of personal jurisdiction.  *See Continental Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1313-14 (10th Cir. 1982). Emails may serve just as well to establish contacts.  *See Consulting Engrs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009).  However, the mere existence of letters, emails, or telephone calls to the forum related to the plaintiff's action does not necessarily satisfy due process standards.  *See Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1418 (10th Cir. 1988).  The

exercise of jurisdiction depends on the quality and nature of the contacts.

Here, not all of the emails between ACM and Cascade that Cascade has presented involve the European Return Fund or the East West L.P. and Limited Funds, but many do. The emails concerning these funds comprise general business discussions, including exchanges between ACM and Cascade about Cascade's needs for tax-related reports, end-of-year reports, and other fund-related information and ACM's transmission of newsletters and updates on fund performance. Several of the emails include ACM's solicitation of additional investments from Cascade. Thus, the Court finds that Cascade has presented sufficient evidence that ACM reached out to the United States via email to conduct business that relates directly to the subject of the instant case. Accordingly, the Court finds that Cascade has satisfied its burden to establish a *prima facie* case that the minimum contacts requirement is satisfied for personal jurisdiction. There is no need to address Cascade's other grounds offered in support of its position.

The Court next turns to an analysis of whether exercising personal jurisdiction would be reasonable. There is an interplay between minimum contacts and reasonableness. Where the showing of minimum contacts is weak, a strong showing of reasonableness may favor jurisdiction. Conversely, a strong showing of minimum contacts may be outweighed by a weak showing of reasonableness and may disfavor jurisdiction. *See OMI Holdings*, 149 F.3d at 1095.

An analysis of five factors guides this Court's inquiry into the reasonableness of exercising personal jurisdiction: (1) the burden on the defendant, (2) the forum's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the potential fora in furthering fundamental substantive social policies. *See*

*OMI Holdings*, 149 F.3d at 1095.

Regarding the first factor, while it is not dispositive, "the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *Id.* at 1096. This concern is heightened when a defendant is from a foreign country, and "great care and reserve should be exercised" before the court asserts personal jurisdiction over a foreign defendant. *See id.* (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987)). In the instant case, ACM is a business entity organized under the laws of the Cayman Islands with its principle place of business in Grand Cayman. This case pertains to funds that ACM served as investment manager and advisor for, which were created under the laws of the Cayman Islands. ACM has no employees or offices in the United States. The burden on ACM is significant, and this factor weighs strongly in ACM's favor.

However, the interests of a plaintiff and the forum may trump the burden placed on a foreign defendant. *See Asahi*, 480 U.S. at 114. In this case, the United States certainly has an interest in resolving a dispute that has arisen under its federal securities laws. This factor weighs in favor of Cascade.

In analyzing the third factor, courts examine whether the plaintiff can obtain convenient and effective relief in another forum. *See OMI Holdings*, 149 F.3d at 1097. This factor may weigh heavily in cases where forcing a plaintiff to litigate in another forum will greatly diminish the plaintiff's chances of recovery because of that forum's laws or because the burden would be so overwhelming as to practically foreclose pursuit of the lawsuit. No showing has been made as to the process that might be used to resolve this dispute under Cayman law, and the Court is not

familiar with Cayman law or process.   However, it is clear that Cayman laws provide for

creation, registration, and regulation of complex investment instruments, it seems a reasonable

presumption that the laws provide for litigation in the face of improper behavior pertaining to

such regulated, registered instruments.  Thus, Cascade may well be able to obtain effective relief

in the courts of the Cayman Islands, but such relief would not be particularly convenient.  In this

case, Cascade's interests in litigating the case in the United States rather than the Cayman

Islands are the reverse image of ACM's interests in not being hauled into court in the United

States.  This factor weighs in Cascade's favor, but not heavily so.

In evaluating the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, courts analyze whether the plaintiff's proposed forum is the most

effective place to litigate a case and look to the location of witnesses, the location of the

underlying wrong, which forum's substantive law will govern, and whether jurisdiction in the

proposed forum is necessary to avoid piecemeal litigation.  *See id.*  At this stage of the litigation,

the identity and location of all of the witnesses is unclear, but it can be assumed that at least one

is in the United States and at least one other is in the Cayman Islands.  Because this case deals

with an alleged  wrong in the form of statements and omissions in a document, the location of

the wrong is difficult to discern and not dispositive.  More compelling are that the instant case

has been brought under United States federal securities laws and that, as Cascade has intimated

by suggesting that it could represent a class, there may be more investor-plaintiffs elsewhere in

the United States prepared to litigate about the events underlying this case.  This favor weighs in

Cascade's favor.

Finally, the Court must examine the shared interest of the United States and the Cayman

Islands in furthering fundamental substantive social policies.  The possibility of a conflict with a foreign nation's sovereign policies is not dispositive, because if this factor were to be given controlling weight, it would always prevent suits against foreign nationals in United States Courts.  *See id.* (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1985)).  In analyzing this factor, courts have looked to whether the foreign nation's law governs the dispute and whether the foreign national chose to conduct business with the forum resident.  *See id.* (collecting cases).  In this instance, United States federal securities laws control this case and ACM clearly chose to conduct business with Cascade.  Accordingly, this factor weighs in Cascade's favor.

Having examined and balanced the foregoing factors, the Court concludes that exercising jurisdiction over ACM in the United States would not offend traditional notions of fair play and substantial justice.  While litigating in the United States imposes a burden on ACM, this burden is not so onerous or severe as to overcome the ACM's contacts with the United States.  The Court finds that it may properly exercise personal jurisdiction over ACM.  The ACM Defendants' motion to dismiss is therefore denied as it relates to Cascade's claims against ACM concerning the European Return Fund and the East West Limited and L.P. Funds.

###       2.       AGP

The ACM Defendants assert that AGP is not subject to personal jurisdiction in this Court because it is a foreign party with no connections to the United States, no involvement with the Return Europe Fund or the East West L.P. and Limited Funds, and no connection to Cascade's purchases of securities underlying this case.  Cascade objects and points the Court to an offering memorandum for East West Fund L.P.  Cascade asserts that as general partner of East West Fund

L.P., AGP was responsible for the statements made in the memorandum and notes that, per the terms of the memorandum, shares of the East West Fund L.P. were only available for purchase to United States citizens, residents, and entities.  Cascade contends that the offering memorandum establishes that AGP purposefully directed its business activities at the United States, thereby satisfying the minimum contacts requirement.

In making this contention, Cascade fails to demonstrate any purposeful action that AGP took to direct its business activities at the United States.  Further, Cascade fails to create a link between AGP purported responsibility for statements made to investors seven months after Cascade's third and final purchase of the relevant funds in this case and the loss of value of the funds that Cascade purchased.  Therefore, Cascade has failed to meet its burden to establish a *prima facie* case for minimum contacts and personal jurisdiction.  *See Soma Medical*, 196 F.3d at 1298.  The ACM Defendants' motion to dismiss must therefore be granted as to all claims against AGP.

### 3.    Messrs. Tompkins and Fleming

The ACM Defendants argue that Messrs. Tompkins and Fleming are not subject to personal jurisdiction in this Court because they are British citizens who reside in the Cayman Islands.  They concede that Messrs. Tompkins and Fleming served on the board of directors of the European Return Fund and the East West Fund Limited, but assert that the two had limited involvement with the administration of the funds and never conducted any business on behalf of the funds in the United States.  Cascade responds that because Messrs. Tompkins and Fleming were directors of the funds, they knew or should have known that the active fund managers were soliciting investors in the United States and that their actions would have consequences in the

United States.  Additionally, Cascade points to the cover page of the offering memoranda for the implicated funds, which state that: (1) the directors of the funds "accept responsibility for the information" contained therein; and (2) the directors of the funds had taken all reasonable care to ensure that the information in the document was true and did not omit anything that would materially affect the information.  Cascade reasons that because, as directors, Messrs. Tompkins and Fleming represented that they had taken care to be sure that the information in the offering memoranda was complete and correct, they knew or should have known that the funds were being sold to citizens and residents of the United States.

Cascade's argument fails to point out any actions that Messrs. Tompkins and Fleming performed to purposefully direct their business activities toward the United States and draws no connection between any actions that Messrs. Tompkins and Fleming performed and Cascade's harm underlying this lawsuit.  *See Soma Medical*, 196 F.3d at 1298.  Moreover, the Court notes that, standing alone, an individual's mere status as a board member is not sufficient to establish jurisdiction.  *See In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008).  Thus, Cascade has failed to meet its burden to establish a *prima facie* case for minimum contacts and personal jurisdiction.  The ACM Defendants' motion is therefore granted as to all claims against Messrs. Tompkins and Fleming.

### C.    Federal Rule 12(b)(6)

Finally, the ACM Defendants move to dismiss Cascade's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Cascade bases its claims for security fraud on the following alleged misstatements or omissions by the ACM Defendants: (1) failure to disclose Mr. Homm's relationship with the penny stock brokerage and with the other fifty

percent owner of the brokerage; (2) failure to disclose that Mr. Homm used assets from the

implicated funds to self-deal with the penny stock brokerage; (3) misrepresentation that when the

funds purchased unlisted securities, said securities would not be worth more than ten percent of

the net asset values of the fund at the time of purchase; (4) misrepresentation that the net asset

values for the fund would be based upon fair prices of the assets; (5) misrepresentation of the net

asset value of the implicated funds; and (6) misrepresentation of the investment objectives and

policies for the Return Europe Fund and East West Limited and L.P. Funds.

To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege facts that

would establish that:

> (1) the defendant made an untrue or misleading statement of material fact, or
> failed to state a material fact necessary to make statements not misleading; (2) the
> statement complained of was made in connection with the purchase or sale of
> securities; (3) the defendant acted with scienter, that is, with intent to defraud or
> recklessness; (4) the plaintiff relied on the misleading statements; and (5) the
> plaintiff suffered damages as a result of his reliance.

*Adams v. Kinder-Morgan, Inc*., 340 F.3d 1083, 1095 (10th Cir. 2003).  The ACM Defendants

argue that Cascade has not made adequate factual allegations in its complaint to satisfy the first

three requirements for all six of the asserted misstatements or omissions.  Specifically, the ACM

Defendants argue that in its complaint, Cascade has not sufficiently asserted that ACM made the

misleading statements and omissions or that the statements and omissions were indeed

misleading, has not sufficiently alleged that ACM actually made the statements and omissions or

that the statements and omissions were made in connection with the purchase or sale, and has not

pled  with sufficient particularity that ACM acted with scienter.  The Court need only address the

latter argument.

There is a strong presumption against dismissal for failure to state a claim.  *See Cottrell,*

*Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999).  However, if the complaint does not contain sufficient facts to make a claim "plausible on its face," the claim must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  In reviewing a complaint under Rule 12(b)(6), a court accepts as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Generally, a plaintiff is not required to include detailed factual allegations in a complaint, but the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  However, with passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"),[7] Congress mandated heightened pleading standards in securities fraud cases.  In a complaint containing a Rule 10b-5 securities fraud claim, a plaintiff must: (1) specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.  *Adams*, 340 F.3d at 1095-96 (citing 15 U.S.C. § 78u-4(b)(1), (b)(2)).

In this case, in order to satisfy the PSLRA, Cascade must plead with particularity facts giving rise to a "strong inference" that ACM acted with an intent "to deceive, manipulate, or defraud" when it made the alleged misstatements and omissions underlying this case.  *Adams*,

---

[7]Pub. L. No. 104-67, 109 Stat. 737 (1995).

340 F.3d at 1095 (citing 15 U.S.C. § 78u-4(b)(2)).  The ACM Defendants argue that Cascade's allegations are merely conclusory and do not satisfy these strict pleading requirements.  Cascade maintains that it has pled adequately and directs the Court to a three-page section in its First Amended Complaint entitled "Allegations of Scienter."

The Court examines Cascade's allegations in their entirety to determine whether they satisfy the PSLRA's pleading requirements.  *See City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1263 (10th Cir. 2001).  Upon review, it is clear that Cascade's allegations concerning Cascade's scienter are merely boilerplate recitations that for each alleged misstatement or omission underlying Cascade's claims, ACM knew that the misstatement or omission was false or misleading and had motive and opportunity to commit securities fraud.  A pleading that simply asserts that the defendant knew of the alleged misleading nature of its statements and omissions does not satisfy the heightened pleading requirement of the PSLRA.  *See Brody v. Stone & Webster, Inc. (In re Stone & Webster, Inc., Sec. Litig.)*, 414 F.3d 187, 206 (1st Cir. 2005).  Cascade's bald, conclusory allegations of knowledge simply cannot suffice.  The total lack of compelling and clear factual allegations concerning ACM's culpability leads the Court to conclude that Cascade has not satisfied the requirement to show a "strong inference" of scienter and has therefore failed to state a claim against ACM.  The ACM's motion to dismiss under Rule 12(b)(6) is thus granted.

**IT IS THEREFORE ORDERED** that Defendants' Motion to dismiss **(#46)** is **GRANTED**:

1.      The motion as it arises under Fed.R.Civ.P. 12(b)(1) is **GRANTED**.  Plaintiff Cascade's claims against any Defendant pertaining to any funds other than those it purchased – namely, the East West Fund L.P., the East West Fund Limited, and the Return Europe Fund – are **DISMISSED** without prejudice;

2.     The motion as it arises under Fed.R.Civ.P. 12(b)(2) is **GRANTED** in part and **DENIED** in part.

    (a)     The motion is **GRANTED** as to the claims against Defendants AGP, Tompkins, and Fleming.  They  are **DISMISSED** without prejudice;

    (b)     The motion is **DENIED** as to claims asserted against Defendant ACM; and

3.     The motion as it arises under Fed.R.Civ.P. 12(b)(6) is **GRANTED**.  The claims against Defendant ACM are **DISMISSED** without prejudice.

DATED this 31st day of March, 2010.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge

-21-